FILED
CLERK, U.S. DISTRICT COURT

JUL 26 2024

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| THOMAS EDWARD CLUTTS, JR., <br><br> Plaintiff, <br><br> vs. <br><br> FEDERAL BUREAU OF PRISON; <br> JOHN DOE (1); <br> JOHN DOE (2); <br> JOHN DOE (3); <br> JOHN DOE (4); <br> JOHN DOE (5); <br> JOHN DOE (6); <br> JOHN DOE (7); <br> JOHN DOE (8); <br> JOHN DOE (9); <br> JANE DOE (1); <br> JANE DOE (2); <br> JANE DOE (3); <br> JANE DOE (4); <br> JANE DOE (5); <br> JANE DOE (6); <br> JANE DOE (7); <br><br> Defendant(s). | **Case Number: 2:24-cv-01291-SPG-AJR** <br><br> **MOTION FOR LEAVE TO AMEND COMPLAINT, MOTION FOR LEAVE TO ADD PARTIES TO COMPLAINT AND FIRST AMENDED COMPLAINT** |

**COMES NOW**, your Plaintiff, **THOMAS EDWARD CLUTTS, JR.** (hereafter "Mr. Clutts"), and represents unto this Honorable Court (hereafter "Court") as follows, to-wit:

Page **1** of **20**

*Thomas Edward Clutts, Jr. v. Federal Bureau of Prisons, et al*     **Central District of California**

## DEFINITIONS

For the purposes of this Complaint, the following definitions shall apply. If or when any of these identifiers are used, the following definitions shall be associated with the identifier:

a.  Thomas Edward Clutts, Jr. – "Mr. Clutts"

b.  Federal Bureau of Prisons – "BOP"

c.  Federal Correctional Institution – "FCI"

d.  Special Housing Unit – "SHU"

e.  Health Services Department – "Health Services"

f.  Keep on Person – "KOP"

g.  Health Services Administrator – "HSA"

h.  Federal Tort Claims Act – "FTCA"

i.  Administrative Remedy Program – "ARP"

j.  Prison Litigation Reform Act – "PLRA"

k.  Informal Resolution Request – "BP-8"

l.  Request for Administrative Remedy (BP-229(13)) – "BP-9"

m.  Regional Administrative Remedy Appeal (BP-230(13)) – "BP-10"

n.  Central Office Appeal (BP-231(13)) – "BP-11"

o.  Randy Dewayne Pittman – "Mr. Pittman"

p.  United States Postal Service – "USPS"

## AMENDED COMPLAINT

On February 17, 2022 Mr. Clutts was assigned to FCI Victorville; located in Adelanto, California. Mr. Clutts was housed in the SHU during the time in which he sustained the permanent damages that were caused by the BOP's medical negligence. Mr. Clutts began notifying BOP officials that he was injured and required emergency medical treatment on February 17, 2022. Mr. Clutts was finally rushed to the emergency room for emergency surgery on February 23, 2022. This lawsuit ensued.

While Mr. Clutts was housed in the SHU, he noticed that his arm was injured. In-fact, Mr. Clutts' arm not only hurt but began to swell excessively. Mr. Clutts first notified a Corrections

*Thomas Edward Clutts, Jr. v. Federal Bureau of Prisons, et al*                    **Central District of California**

Officer (**John Doe #1**) – on February 17, 2022 – of his condition and requested to see someone from Health Services because he was concerned about his arm. Mr. Clutts' request to **John Doe #1** was disregarded as irrelevant. Therefore **John Doe #1's** dereliction of duty is significant because had **John Doe #1** taken appropriate action, Mr. Clutts' condition could have been resolved without him losing all motor function of his arm.

After Mr. Clutts' request to **John Doe #1** was denied or disregarded, Mr. Clutts waited until someone from Health Services came around for "pill call." While the nurse was making rounds in the SHU – passing out pills to inmates who receive medication that is not KOP – Mr. Clutts went to his door and requested that the nurse (**John Doe #2**) take him to Health Services so he could be evaluated and so he could get medical treatment because his arm was swollen beyond what could be considered "normal swelling" at that point. Mr. Clutts was told that he should "fill out a sick call" and he would be seen by a provider "during sick call." Mr. Clutts then asked how long he would be expected to suffer if he was required to wait on sick call. **John Doe #2** told Mr. Clutts that he didn't know when Mr. Clutts would be seen but to fill out the sick call form and he would be seen when Health Services could get to him. Therefore, **John Doe #2's** dereliction of duty is significant because had **John Doe #2** taken appropriate action, Mr. Clutts' condition could have been resolved without him losing all motor function of his arm.

Mr. Clutts accepted the sick call form from **John Doe #2** and filled it out. Before **John Doe #2** could leave the housing unit range, Mr. Clutts' cell-mate had filled out the form for Mr. Clutts and Mr. Clutts was able to return the sick call form to **John Doe #2**. Mr. Clutts does not know if **John Doe #2** turned in the form or disposed of the form because Mr. Clutts was locked behind a door in the SHU and could not tell this Court what **John Doe #2** done with the form after it was submitted.

Mr. Clutts expected to see someone for sick call the following morning. In the SHU, Health Services typically conducts a sick call once or twice per week. In some facilities Health Services will conduct a sick call on Monday and Friday and some facilities Health Services will conduct sick call on Wednesdays. Either way, Mr. Clutts expected that he would be seen immediately because of the severity of his arm.

On February 18, 2022 Mr. Clutts submitting his sick call form, Mr. Clutts notified a different Corrections Officer (**Jane Doe #1**) that his arm was severely swollen and he desperately needed to see someone from Health Services because the pain was excruciating. **Jane Doe #1** told Mr. Clutts that she would call Health Services and let them know that Mr. Clutts needed to see someone. Mr. Clutts does not believe **Jane Doe #1** took any action because no one from Health Services came to the SHU to examine Mr. Clutts.

Hours after Mr. Clutts had requested that **Jane Doe #1** contact someone from Health Services, Mr. Clutts heard a voice he recognized as a Health Services staff member (**Jane Doe #2**). Mr. Clutts went to his door and waited on **Jane Doe #2** to pass by his door. Mr. Clutts summoned **Jane Doe #2** to his door and showed her his arm. Mr. Clutts begged **Jane Doe #2** to do something and get him some help. **Jane Doe #2** wrote down Mr. Clutts' name and registry number and told Mr. Clutts that he needed to fill out a sick call sheet. Mr. Clutts told **Jane Doe #2** that he already filled out a sick call sheet but hadn't been seen. **Jane Doe #2** then told Mr. Clutts that she would check on his sick call and notify his provider that his arm was extremely swollen and that Mr. Clutts was requesting to be seen on an emergency basis.

Later the same day, Mr. Clutts observed **Jane Doe #2** coming around in the evening as she was passing out medication during evening pill call. Mr. Clutts asked **Jane Doe #2** if he was going to be seen for his arm. **Jane Doe #2** then told Mr. Clutts that there was no sick call turned in for him and told him that he must fill out a sick call before he would be seen. **Jane Doe #2** give Mr. Clutts another sick call form. Mr. Clutts' cell-mate, again, filled out the sick call form and Mr. Clutts immediately turned in the form to **Jane Doe #2** before **Jane Doe #2** could leave the housing unit range.

While the Corrections Officer (**John Doe #3**) was passing out the evening meals, Mr. Clutts requested that **John Doe #3** get the Operations Lieutenant to come to the SHU so Mr. Clutts could speak to him. Mr. Clutts explained to **John Doe #3** that his arm was in excruciating pain and that it was at least twice the size it should be; due to swelling. **John Doe #3** told Mr. Clutts that he would notify the Operations Lieutenant but could almost guarantee Mr. Clutts that he wouldn't see the Operations Lieutenant that evening. Mr. Clutts does not know if **John Doe #3** notified the

*Thomas Edward Clutts, Jr. v. Federal Bureau of Prisons, et al*          **Central District of California**

Operations Lieutenant because no one came to the SHU to speak to Mr. Clutts. **John Doe #3's** dereliction of duty – by not getting the Operations Lieutenant to the SHU – caused irreparable damages to Mr. Clutts' arm because had Mr. Clutts been seen at this stage of his injury, it is likely that he would not have lost all motor function of his arm.

On February 19, 2022 Mr. Clutts spoke to another Health Services staff member (John Doe #4) who also wrote down Mr. Clutts' name and registry number. **John Doe #4** assured Mr. Clutts that he would notify Mr. Clutts' provider and ask that the provider immediately come to the SHU and examine his arm. **John Doe #4** again told Mr. Clutts that he needed to fill out a sick call form and turn it in to Health Services. Mr. Clutts assured **John Doe #4** that he had already submitted numerous sick call forms and no one was helping him. Mr. Clutts demanded that **John Doe #4** have his provider come to the SHU and evaluate his condition immediately.

On the same day Mr. Clutts actually seen the Operations Lieutenant (**John Doe #5**) walking on the housing unit range. Mr. Clutts went to his door and spoke to **John Doe #5**. Mr. Clutts explained to **John Doe #5** that his arm had been swelling for a couple days and he had submitted numerous sick call forms. Mr. Clutts explained to **John Doe #5** that he had spoke to numerous staff members from Health Services and no one would help him. Mr. Clutts began to show John Doe #5 his arm and the amount of swelling when **John Doe #5** told Mr. Clutts that he didn't want to see his arm because he was in "Correctional Services" and couldn't do anything to help him. **John Doe #5's** dereliction of duty caused Mr. Clutts condition to worsen because had **John Doe #5** acted appropriately, Mr. Clutts could have been evaluated and treated for his condition and likely wouldn't have lost all motor function of his arm. But, because John Doe #5 chose to take no action, Mr. Clutts' condition worsened and he now has no motor function of his arm.

On the same day Mr. Clutts again seen a nurse (**Jane Doe #3**) coming to pass out medication for evening pill line. Mr. Clutts asked her to draw him from his cell so that he could be examined. Mr. Clutts told **Jane Doe #3** that if she would draw him from his cell and actually look at his arm, Mr. Clutts would be rushed to the hospital because the injury was that bad. **Jane Doe #3** then told Mr. Clutts that she couldn't have Mr. Clutts drawn from his cell because it was

after 16:00 hours and there was no one at the prison who could order a transport to the hospital. **Jane Doe #3** then walked away after she told Mr. Clutts that he would need to be seen at sick call.

On February 20, 2022, Mr. Clutts' Corrections Counselor (**John Doe #6**) came on the housing unit range where Mr. Clutts was housed. Mr. Clutts begged **John Doe #6** to take action and help him get treatment for his arm. **John Doe #6** explained to Mr. Clutts that he would contact Health Services and speak to Mr. Clutts' provider and ask that his provider come see Mr. Clutts because **John Doe #6** said: "*Even I can tell that you are in a world of pain and that needs immediate medical attention.*" Because no one came to evaluate Mr. Clutts' arm, it is only assumed that **John Doe #6** took no action to assist Mr. Clutts and this inaction led to Mr. Clutts permanent damages to his arm.

Later this day, Mr. Clutts spoke to the SHU Lieutenant (**John Doe #7**) and requested that **John Doe #7** assist him by getting someone from Health Services to come evaluate his arm. Mr. Clutts began to show **John Doe #7** his arm and the amount of swelling. **John Doe #7** observed Mr. Clutts' arm and promised him that he would call his provider and get the provider to come evaluate Mr. Clutts' arm immediately. Because Mr. Clutts did not see his provider on this day, it is only assumed that **John Doe #7** did not summon the provider to come evaluate Mr. Clutts; which has now caused Mr. Clutts to have no motor function of his arm.

On the same day, Mr. Clutts spoke to another Corrections Officer (**Jane Doe #4**) and asked her to contact Health Services to get someone to come evaluate his condition. **Jane Doe #4** told Mr. Clutts that she was "busy" and wasn't "going to lie" to Mr. Clutts and make a promise she could not keep. So, **Jane Doe #4** told Mr. Clutts that he just needed to fill out a sick call and Health Services would see him when they seen him. It is this dereliction of duty that led to the permanent damages of Mr. Clutts' arm and his inability to use his arm today.

On February 22, Mr. Clutts heard his provider (**John Doe #8**) speaking outside his door. Mr. Clutts began to kick his door and yell loudly for his **John Doe #8** to come to his cell door. **John Doe #8** came to Mr. Clutts' door and asked what the problem was. Mr. Clutts showed **John Doe #8** his arm and demanded that he be drawn from his cell and evaluated. **John Doe #8** told Mr. Clutts that he was in the middle of dealing with another inmate and he would return later that

*Thomas Edward Clutts, Jr. v. Federal Bureau of Prisons, et al*                    **Central District of California**

afternoon to examine Mr. Clutts' condition. **John Doe #8** never returned to evaluate Mr. Clutts' condition that day. **John Doe #8's** dereliction of duty directly led to the permanent damages Mr. Clutts sustained at FCI Victorville.

On February 18, 2022, Mr. Clutts heard SHU staff coming around telling all the inmates to clean their cell and get things in order because the "Executives" were doing their weekly walk-thru. Mr. Clutts waited patiently by his door for the Executives to walk through the housing unit range. The "Executives" walking through are ordinarily the Warden, Executive Assistant, Associate Warden of Programs, Associate Warden of Operations, Captain, SHU Lieutenant, Unit Managers, Trust Fund Manager, Health Services Administrator and an Operations Lieutenant.

During the executive walk-thru, Mr. Clutts spoke directly to the Warden (**Jane Doe #9**) and explained his condition and the pain he was in. **John Doe #9** told Mr. Clutts that he needed to speak to the HSA. **John Doe #9** also wrote down Mr. Clutts' name and registry number and said he would follow up with Mr. Clutts. **John Doe #9** took no action because it is undisputed the Warden could certainly take immediate action to get Mr. Clutts medical attention. But, **John Doe #9** took no action to assist Mr. Clutts and this dereliction of duty further injured Mr. Clutts and led to the permanent damage of his arm. Had **John Doe #9** taken immediate action, Mr. Clutts' condition may not be what it is today but **John Doe #9** took no action and Mr. Clutts' condition worsened every day until he was finally rushed to the emergency room for treatment; days later.

Mr. Clutts waited on the HSA to come around during the executive walk-thru. Unfortunately, Mr. Clutts never seen the HSA during the executive walk-thru. Therefore, **John Doe #9** had lied to Mr. Clutts because **John Doe #9** knew that the HSA was not going to walk through the housing unit range because the HSA wasn't even participating in the executive walk-thru that day. **John Doe #9** lied to Mr. Clutts just to satisfy Mr. Clutts because by the time Mr. Clutts realized the HSA was not going to walk through the housing unit range, it would be too late for Mr. Clutts to do anything. This is exactly what transpired.

Over the weekend, Mr. Clutts spoke to another nurse (**Jane Doe #5**) regarding his condition. **Jane Doe #5** told Mr. Clutts that there was nothing she could do to help him because it was "the weekend" and there was no one at the prison who could help him. Mr. Clutts told **Jane**

*Thomas Edward Clutts, Jr. v. Federal Bureau of Prisons, et al*                    **Central District of California**

**Doe #5** that she could send him to the hospital and **Jane Doe #5** told Mr. Clutts that "*it isn't that easy*" as she walked away from his door. **Jane Doe #5's** dereliction of duty led to the permanent injuries that Mr. Clutts sustained because of the negligence of staff at FCI Victorville.

On February 19, 2022 Mr. Clutts spoke to another Corrections Officer (**Jane Doe #6**) because his pain was so severe. **Jane Doe #6** told Mr. Clutts that "*everyone*" knows about his "*situation*" and the only thing Mr. Clutts could do it "*wait on sick call*." Because **Jane Doe #6's** dereliction of duty, Mr. Clutts injuries are far worse than they would have been if Mr. Clutts had received immediate medical treatment.

Mr. Clutts spoke to another Lieutenant (**Jane Doe #7**) regarding his condition. **Jane Doe #7** refused to even look at Mr. Clutts' arm. **Jane Doe #7** told Mr. Clutts: "*You're not getting me in a trick bag where my name ends up on a lawsuit. I'll write down your name and number and pass it on to the appropriate department but I can make you no promises. It's the weekend and you know, like I know, that no one is here to see you or treat you. But, I'm going to do my job and pass the information to the appropriate personnel. That's all I can do for you.*"

The truth of the matter is that **Jane Doe #7** could have made the call to have Mr. Clutts transported to the hospital. **Jane Doe #7** does not have to rely on anyone from Health Services to have Mr. Clutts taken to the hospital. In-fact, the Operations Lieutenant (which **Jane Doe #7** alleged to be the acting Operations Lieutenant that day) has the authority to send an inmate to the hospital at any time, for any reason, without the approval of Health Services. The Operations Lieutenant has an obligation to ensure the safety of all inmates; which includes ensuring an inmate with an emergency medical need is cared for. But, **Jane Doe #7** chose not to take any action to assist Mr. Clutts and that dereliction of duty led to the permanent damages Mr. Clutts sustained at FCI Victorville.

Five (5) days after Mr. Clutts first notified **John Doe #1** that his arm was in excruciating pain and was extremely swollen, Mr. Clutts was finally drawn from his cell to be examined by a nurse during the sick call. Within minutes of Mr. Clutts being taken to the cell where sick call is conducted, the nurse told Mr. Clutts that his arm was not something that could be treated in a sick call setting. She asked Mr. Clutts how long he had been like this and Mr. Clutts told the nurse that

*Thomas Edward Clutts, Jr. v. Federal Bureau of Prisons, et al*                    **Central District of California**

his condition had been like this for approximately five (5) days. The nurse asked Mr. Clutts why he didn't insist on being seen earlier because his condition was not a typical sick call issue and should have been treated on an "emergency basis." Mr. Clutts told the nurse that he had told everyone who would listen and no one cared. Everyone told him he should wait until sick call and he would receive treatment then.

Mr. Clutts was rushed to the emergency room at a local hospital. Mr. Clutts was initially told that his arm would be amputated because his injuries were so severe. Mr. Clutts was resigned to the fact that he was going to lose his arm because of the negligence of BOP and BOP staff members. When Mr. Clutts was in post-operative recovery, he came back to consciousness to find that he still had his arm. The doctor told Mr. Clutts that he was able to save his arm but it may not be much use to him even though it had been saved.

For more than two (2) years, Mr. Clutts has worked tirelessly to make use of his arm. Mr. Clutts has undergone physical therapy and has relentlessly focused his energy and efforts into making use of his arm. But, the reality of the situation is never going to change. Mr. Clutts' arm is nothing more than a club and he will never have the same use of his arm as he did prior to the injuries he sustained due to the negligence of the BOP and its staff members.

## LEGAL ANALYSIS

Mr. Clutts brings this Complaint against the BOP and several unnamed defendants. This is because Mr. Clutts' injuries date back more than two (2) years and he does not have the names of the BOP employees who injured him, or caused him to be injured. Mr. Clutts brings this Complaint against the BOP for medical negligence and Mr. Clutts brings this Complaint against the BOP staff members (**John Doe 1-9 & Jane Doe 1-7**) pursuant to ***Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics***, 403 U.S. 388, 91 (1971).

The BOP could have prevented this injury had Mr. Clutts' condition been evaluated the day he made the request to see someone for medical treatment. But, the BOP, by and through its employees, chose to disregard Mr. Clutts' request(s) – not once but for six (6) days – and failed to provide Mr. Clutts with medical treatment. The BOP's negligence led to Mr. Clutts essentially

*Thomas Edward Clutts, Jr. v. Federal Bureau of Prisons, et al*                    **Central District of California**

losing his arm. While Mr. Clutts did not have his arm amputated, the doctors told him it would be amputated when he came out of surgery, his arm is nothing more than a club today.

The claim against the BOP staff members is a result of these federal employees intentionally causing irreparable harm to Mr. Clutts. At any time, during the six (6) days Mr. Clutts waited to see someone for sick call, any of the employees of the BOP could have demanded that Mr. Clutts be taken to the hospital. Had this taken place, there is no doubt that Mr. Clutts' condition would not be what it is today. The damages Mr. Clutts sustained – as a result of his civil rights being violated – has left Mr. Clutts with what amounts to a club as an arm.

Mr. Clutts makes it clear that he has already brought the medical negligence claim against the BOP under the FTCA. The United States of America has failed to respond to Mr. Clutts' FTCA demand. More than six (6) months has passed since Mr. Clutts filed his FTCA demand. (See 28 U.S.C. § 2675(a); *Tritz v. U.S. Postal Serv.*, 721 F.3d 1133, 1140 (9th Cir. 2013) ("[F]ederal district courts have jurisdiction to hear a plaintiff's tort claim under the FTCA only after the plaintiff has exhausted the claim by submitting it to the appropriate federal agency first."). "The purpose of the FTCA's administrative claim procedure is 'to encourage administrative settlement of claims against the United States and thereby to prevent an unnecessary burdening of the courts.'" *Brady v. United States*, 211 F.3d 499, 503 (9th Cir. 2000) (quoting *Jerves v. United States*, 966 F.2d 517, 521 (9th Cir. 1992)); see also *Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1047 (9th Cir. 2013) (FTCA's exhaustion requirement "reduc[es] court congestion by keeping claims out of court until an administrative agency has had a chance to settle them").

Mr. Clutts also shows that he has attempted to exhaust the ARP. The PLRA requires that before [you] file a lawsuit, [you] must try to resolve [your] complaint through the prison's grievance procedure. This usually requires that [you] give a written description of your complaint (often called a "grievance") to a prison official. If the prison provides a second or third step (like letting you appeal to the warden), then [you] must also take those steps.

When Mr. Clutts shows that the BOP has relentlessly denied Mr. Clutts the ability to pursue his claims using the ARP. Mr. Clutts does not feel compelled to explain the entire ARP process, but will describe what he knows of the ARP. The ARP begins with an "Informal Resolution

*Thomas Edward Clutts, Jr. v. Federal Bureau of Prisons, et al*          **Central District of California**

Request." This is known as a "BP-8" form. In order to file a formal grievance, the inmate must attempt an informal resolution. If the informal resolution is not satisfactory, the inmate is supposed to be able to file a BP-9.

The problem is that if an inmate attempts to file a BP-9 without first receiving a response to a BP-8, his or her BP-9 is denied for failure to provide sufficient proof that a BP-8 was attempted. After a BP-9 is filed, the Warden of the institution must respond to the BP-9 in writing. If the inmate is not satisfied with the Warden's response, he or she may file a BP-10 to the Regional Director. If the inmate is not satisfied with the BP-10 response, he or she may then appeal to the Central Office and obtain a written response from the General Counsel.

There is clearly time deadlines for all these levels of the ARP. The BP-8 is supposed to receive a written response "within seven (7) days" of filing the BP-8. The BP-9 is supposed to receive a written response "within twenty (20) days" of filing the BP-9. The BP-10 is supposed to receive a written response "within thirty (30) days" of filing the BP-10. The BP-11 is supposed to receive a written response "within forty (40) days" of filing the BP-11.

During the course of the ARP, each level – not including the BP-8 – of the ARP has a time extension that is authorized by statute. At the institutional level, the Warden can get an extension of twenty (20) calendar days. At the Regional Office level, the Regional Director can get an extension of thirty (30) days. At the Central Office level, the General Counsel can get an extension of twenty (20) days. But, any time there is an extension, the inmate is supposed to be notified in writing.

Mr. Clutts shows that he has attempted the ARP. Mr. Clutts shows that the BOP has purposely interfered with the ARP by failing to provide Mr. Clutts the ARP forms needed to file his formal grievance. Mr. Clutts shows that he has now attempted to file the BP-8 form no less than ten (10) times. Every time Mr. Clutts attempts to file a BP-8 form, the Corrections Counselor (the designated prison official responsible for providing the BP-8 to the inmate and providing the inmate with a written response) refuses to provide Mr. Clutts with a written response. Therefore, Mr. Clutts is prohibited by statute from filing a formal grievance with the Warden of the institution. If Mr. Clutts cannot file a formal grievance with the Warden, he is prohibited by statute from

continuing the ARP; which would include appealing the Warden's decision to the Regional Director or the Central Office's General Counsel.

Mr. Clutts shows that not only will the Corrections Counselor not provide him a response to any BP-8 form that he files, but Mr. Clutts shows that the Corrections Counselor refuses to even provide him a BP-9 form so that he may begin the ARP by filing a formal grievance with the Warden. The reason the BOP is interfering with the ARP is very simple. The BOP is fully aware of the damages that Mr. Clutts has suffered and believes the way to combat the inevitable claim against the BOP is to stall Mr. Clutts and take all actions possible to prohibit Mr. Clutts from exhausting the ARP so that he may bring a formal complaint against the BOP in federal court.

Mr. Clutts shows that the BOP – by and through its employees – has purposely interfered with the ARP to the point that the ARP should be considered moot. Mr. Clutts shows that should this Court decide that the ARP is required before bringing this Complaint, then Mr. Clutts seeks an Order from this Court that provides that the BOP must strictly follow the ARP procedure by providing Mr. Clutts with every form required to exhaust the ARP and by requiring the BOP to timely respond at every level of the ARP. Then, Mr. Clutts would file an instant motion for leave to complete the ARP. Mr. Clutts would additionally request this Court enter an Order that would require the BOP to provide proof that his ARP forms were delivered to him promptly and that all ARP responses were provided to him on time and within the timeframe allotted by statute.

The reason Mr. Clutts brings this to the Court's attention is because the BOP is notorious for stalling inmate's responses and making it impossible for inmates to adhere to the ARP. An example is as follows: An inmate has an appeal at the Regional Office. The Regional Director signs a BP-10 on January 20, 2024. The Regional Director's mail is then sent to the inmate at the institution where he or she is assigned. The Administrative Remedy Coordinator at the institution receives the BP-10 – let's say on January 28, 2024. Then, for whatever reason, the Administrative Remedy Coordinator doesn't get the BP-10 to the inmate's unit team for another week. Then, the unit team sits on the BP-10 for another ten (10) or so days. By the time the inmate receives the BP-10, the timeframe to file a Central Office Appeal to the General Counsel has already passed.

*Thomas Edward Clutts, Jr. v. Federal Bureau of Prisons, et al*                    **Central District of California**

Of course the United States Attorney is going to swear to the Court that this would never happen. The BOP is timely and would never interfere with the ARP. So, what Mr. Clutts is going to do is provide this Court with a prime example of exactly what is being alleged in this Complaint. Mr. Clutts is going to provide this Court with not one (1) but three (3) examples of malfeasance by the BOP; specifically staff at FCI Butner II – the prison that Mr. Clutts is assigned.

The three (3) examples that Mr. Clutts is going to provide cannot be disputed. The record will speak for itself. The examples are corroborated by a Unit Manager – Mr. David Jarvis – at FCI Butner II. Mr. Jarvis provided a United States Government memorandum that specifically describes the events that made the ARP moot. This Court may evaluate the documents (See **Exhibit "A"**) and then conclude that everything Mr. Clutts is saying is true, accurate and correct. The BOP intentionally interferes with the ARP in order to try and deter inmates from exercising their rights by attempting to gain access to the Court.

A summary of the documents that will be found in Exhibit "A" is as follows: On or about May 28, 2023 Mr. Pittman began the ARP by filing a BP-8, while at FCI Butner II. Mr. Pittman's BP-8 was never responded to – as was the case when Mr. Clutts filed his BP-8 at FCI Butner II – so Mr. Pittman had to refile his BP-8 numerous times. It would be months before Mr. Pittman finally went to the Warden herself and demanded a response. The Warden at FCI Butner II finally told Mr. Pittman that he could skip the BP-8 and proceed directly to a BP-9.

After Mr. Pittman filed his initial BP-9 the Warden would essentially interfere with the ARP because she did not adhere to the Program Statement by providing Mr. Pittman a response within the time allowed for a response, to include the time allowed for an extension. That, in itself, made the ARP moot but Mr. Pittman continued to file his grievances with the ARP.

On August 03, 2023 Mr. Pittman filed his initial BP-10 with the Regional Director. The Regional Director initially rejected Mr. Pittman's BP-10 because Mr. Pittman failed to produce proof that he attempted an informal resolution. Of course, Mr. Pittman could not provide proof of the BP-8 because none existed. So, Mr. Pittman had to provide a written statement from a BOP staff member to show that he was advised to skip the BP-8.

*Thomas Edward Clutts, Jr. v. Federal Bureau of Prisons, et al*                    **Central District of California**

Then, on August 30, 2023 Mr. Pittman re-filed his BP-10 with the Regional Director. The policy is clear in that the Regional Director had thirty (30) days to respond and could extend the time to respond by thirty (30) additional days. So, even in a best-case scenario, the BOP's Regional Director should have responded to Mr. Pittman's BP-10 no later than October 29, 2023. That means Mr. Pittman should have received his response no later than November 05, 2023 because there is no place in the United States where it would take the USPS more than seven (7) days to deliver mail from one address in the United States to another address in the United States.

On February 29, 2024 Mr. Pittman finally received the response to his BP-10. The BP-10 was filed, and accepted, on August 30, 2023 yet Mr. Pittman did not receive his response until February 29, 2024 (See **Exhibit "B"**). But, it gets better. The United States Attorney will certainly argue that the Program Statement allows Mr. Pittman to skip the BP-10 process if he has filed his BP-10 and waited the time allowed for a response, to include an extension, and no response has been provided.

The only problem with this fact is that Mr. Pittman attempted to skip the BP-10 and move directly to the "next level" of the ARP – as is provided for in the BOP's Program Statement. As a matter-of-fact, the Program Statement is explicit in that it says:

**Program Statement 1330.18(12) – 542.18**

*If the inmate does not receive a response within the time allotted for a reply, including extension, the inmate may consider the absence of a response to be a denial at that level."*

Because Mr. Pittman had waited, and followed the Program Statement, then on November 15, 2023 (more than two (2) weeks after the Regional Director's response was due to Mr. Pittman) then wrote a letter (See **Exhibit "C"**) that was filed with Mr. Pittman's initial BP-11. On November 15, 2023 Mr. Pittman filed his BP-11 and forwarded it to the Central Office. The General Counsel rejected Mr. Pittman's BP-11 because Mr. Pittman did not provide a copy of his BP-10 and the Regional Director's response to his BP-10.

Does this Court understand the games played by the BOP? The BOP has a Program Statement that it is supposed to go by. Then, to deter access to the courts, the BOP will

*Thomas Edward Clutts, Jr. v. Federal Bureau of Prisons, et al*                    **Central District of California**

intentionally interfere with the ARP to cause such problems that the inmate may not comply with the policy; which will make it impossible for the inmate to access the courts.

To confirm what Mr. Clutts alleges in this Complaint, the record will further speak for itself. Once an inmate receives a response from the Regional Director, he or she has thirty (30) days to timely file a response to the Central Office and/or the General Counsel. So, why is it that when Mr. Pittman filed his BP-11 – after receiving his BP-10 response – the General Counsel rejected the BP-11 because it was alleged that Mr. Pittman's BP-11 was "untimely."

The reason the General Counsel rejected Mr. Pittman's BP-11 is because by the time Mr. Pittman actually received the BP-10 response more than thirty (30) days has elapsed and the time for Central Office Appeal had passed. Therefore, only because of the interference by the BOP, Mr. Pittman's Central Office Appeal was "untimely" and denied.

Essentially, Mr. Pittman began the ARP in May 2023. Mr. Pittman didn't miss any deadline or time-frame. As a matter-of-fact, Mr. Pittman would have filed – at every level of the ARP – every appeal the very day he received a response from the previous level. Yet, after nearly nine (9) months of appeals and adhering to the ARP, the BOP ultimately rejected Mr. Pittman's grievance by suggesting that he was "untimely" in his filing.

At the end of the day, Mr. Pittman discharged from prison on April 26, 2024. The irony in this entire grievance is that Mr. Pittman was seeking relief that would have assisted his discharge. That is the only relief Mr. Pittman sought in his grievance. But, as the record is clear, Mr. Pittman finally received a United States Government memorandum (See "**Exhibit "D"**") on February 29, 2024 that clarified all of the nefarious behavior the BOP had participated in to interfere with the ARP.

On February 29, 2024 Mr. Pittman forwarded the BP-11 to the Central Office. Therefore, the General Counsel could have easily provided Mr. Pittman a response to his BP-11 prior to his discharge from federal prison. But, to show absolute defiance and interference, the BOP chose not to respond – within the twenty (20) days allowed by the Program Statement – to Mr. Pittman's BP-11 before he discharged but, instead, got an extension that made the response due to Mr. Pittman on May 14, 2024; or some two (2) weeks AFTER Mr. Pittman would have discharged his

*Thomas Edward Clutts, Jr. v. Federal Bureau of Prisons, et al*   **Central District of California**

sentence. This cowardly act made Mr. Pittman's ARP filing moot because there is no way Mr. Pittman could receive the relief sought because he would not be in custody when a response was due.

What Mr. Clutts shows is that Mr. Pittman's case proves that the ARP is insufficient and should be abolished by the BOP. This Court should also consider the ARP to be insufficient and should be considered moot by this Court.

Mr. Clutts has – like Mr. Pittman – attempted to file BP-8 forms numerous times. No one will provide Mr. Clutts with a response to a BP-8. Then, when Mr. Clutts attempts to obtain a BP-9 form, he is denied the form because he has not been provided a BP-8 response. Mr. Clutts' Corrections Counselor says that a BP-9 is ONLY provided when a BP-8 response is provided to the inmate. So, Mr. Clutts physically cannot file with the ARP because BOP officials intentionally interfere with the ARP. Therefore, this Court should consider the ARP to be moot.

In addition to these important facts, Mr. Clutts seeks seven-million five-hundred-thousand dollars ($7,500,000.00) in damages. The ARP does not provide for financial damages to be awarded to an inmate. Therefore, Mr. Clutts could not receive the relief sought via the ARP. A formal complaint is required to be filed with the United States District Court in order to seek the damages demanded.

With regards to the FTCA form that Mr. Clutts filed, Mr. Clutts shows that he has already attempted to file a federal tort claim against the BOP. Mr. Clutts has filed a federal tort claim and more than six (6) months has elapsed since Mr. Clutts' filing. The BOP, or the United States, has not responded to Mr. Clutts' federal tort claim therefore Mr. Clutts considered a non-response to be a denial of relief. Therefore, Mr. Clutts' Complaint is ripe and the relief demanded is warranted.

## MEDICAL RECORDS REQUEST

Mr. Clutts has attempted to gain access to his medical records. The BOP Health Services medical records staff member tells Mr. Clutts that the BOP does not maintain the sick call forms that are submitted to medical professionals. Mr. Clutts is told the BOP takes the paper sick call forms and enters the information into the scheduling system then shreds the paper sick call forms. Mr. Clutts sought to obtain the medical records so that he could show that he submitted four (4)

*Thomas Edward Clutts, Jr. v. Federal Bureau of Prisons, et al*          **Central District of California**

sick call forms between February 17, 2022 and February 23, 2022. This information would show that the BOP – and all the other identified defendants who violated Mr. Clutts' civil rights – was negligent in providing Mr. Clutts medical treatment, or care, which led to the extensive injuries/damages Mr. Clutts seeks financial compensation for in this Complaint.

## DAMAGES & INJURIES

Mr. Clutts' injuries are profound. Mr. Clutts begged for medical treatment while he was in the SHU at FCI Victorville. Mr. Clutts' requests fell on deaf ears. BOP officials chose to neglect Mr. Clutts request for medical treatment. Mr. Clutts showed his injuries to BOP officials for six (6) days prior to being rushed to the emergency room for emergency surgery. Doctors at the hospital could not believe the BOP let Mr. Clutts sit in a cell for six (6) days prior to rushing him to the emergency room for emergency surgery.

Today, Mr. Clutts has no use of his right arm. Mr. Clutts cannot use his arm for any useful purpose. Mr. Clutts has a right arm but it is nothing more than a club. Mr. Clutts does not have motor function of his right hand. Mr. Clutts cannot utilize his right hand to write, clean his skin, grip items, type, hold a telephone, hold a computer tablet, eat, brush his teeth, clean himself after using the restroom or any other necessary, or essential, function of a human being.

The damages Mr. Clutts sustained would not have occurred had the BOP taken action when Mr. Clutts notified prison officials of his injuries. Physicians who treated Mr. Clutts confirmed that his arm is nothing more than a club and that his injuries were directly related to the negligence of the BOP. The BOP failed to provide care for Mr. Clutts and that negligence cannot be disputed. Mr. Clutts reported pain in his arm for six (6) days. Mr. Clutts' arm went from moderate swelling to swelling the size of a football in those six (6) days.

Mr. Clutts was in the hospital for months. Mr. Clutts experienced pain that cannot be scaled on any pain scale. Mr. Clutts was forced to undergo numerous surgeries to save his arm and life. Mr. Clutts was forced to undergo numerous surgeries that were for cosmetic procedures (skin grafts). Mr. Clutts cannot utilize his right arm or hand today. These injuries are directly related to the negligence of the BOP and its prison officials who violated Mr. Clutts' civil rights by denying him medical treatment when he was ill and could not provide self-care for himself.

Page **17** of **20**

This Court should immediately order the BOP and all defendant(s) to pay Mr. Clutts seven-million five-hundred-thousand dollars ($7,500,000.00) in damages for the injuries that Mr. Clutts sustained as a result of the civil rights violations and the negligence of the BOP and all prison officials identified in this Complaint.

## CONCLUSION

Mr. Clutts identified his injuries on February 17, 2022 and reported those injuries to BOP staff members, or prison officials. Mr. Clutts notified no less than sixteen (16) prison officials – to include the Warden at FCI Victorville – of his injuries. The BOP, and all identified prison officials, acted with complete negligence by failing to provide Mr. Clutts medical treatment or care. Mr. Clutts was forced to remain in a cell, inside the SHU, for a period of six (6) days before he was even evaluated by a medical professional.

As the record will reveal, Mr. Clutts wasn't treated by any medical professional, while at FCI Victorville. Mr. Clutts' injuries were so substantial that he was "rushed to the emergency room" because his injuries required "emergency surgery" because the BOP had allowed Mr. Clutts' condition to become life-threatening because of the time that had elapsed before Mr. Clutts was actually evaluated, and/or, treated by any medical professional at FCI Victorville.

The record will reveal that Mr. Clutts has attempted to gain access to his medical records. Mr. Clutts has sought these records so he could provide evidence of his filing numerous sick call requests – to include his initial filing of February 17, 2022 – that dated back six (6) days prior to Mr. Clutts actually being evaluated by a medical professional. That negligence is what led to Mr. Clutts' arm being nothing more than a club today.

Mr. Clutts has previously filed a federal tort claim, as required by the FTCA and more than six (6) months has elapsed since that federal tort claim was filed. This action makes this negligence claim against the BOP ripe to be decided by this Court. Mr. Clutts has now identified numerous defendants who intentionally violated his civil rights. This violation of rights was deliberate and intentional. The injuries that Mr. Clutts sustained are life-changing and the damages demanded are warranted.

## PRAYER FOR RELIEF

*Thomas Edward Clutts, Jr. v. Federal Bureau of Prisons, et al*      **Central District of California**

Mr. Clutts prays unto this Court as follows: Mr. Clutts prays this Court grant the relief sought against the defendants. Mr. Clutts prays this Court order the BOP to pay him seven-million five-hundred-thousand dollars ($7,500,00.00) for damages resulting from negligence. Mr. Clutts prays this Court order defendant(s): John Doe 1-9 and Jane Doe 1-7 to pay Mr. Clutts one-million dollars ($1,000,000.00) per defendant for violating his civil rights and refusing to provide medical treatment for his injuries.

Mr. Clutts prays unto this Court that should this Court determine that the ARP was not completed, this Court grant Mr. Clutts leave to exhaust the ARP then provide this Court with the response of the BOP after exhausting that function. Moreover, Mr. Clutts prays that if this Court grants leave to exhaust the ARP, this Court will further enter an Order requiring the BOP to provide Mr. Clutts with the appropriate forms required to exhaust the ARP and provide Mr. Clutts with responses that meet each and every time-frame provided by the Program Statement.

Mr. Clutts prays unto this Court for further and general relief that this Court or Jury may deem just, proper and equitable.

Respectfully submitted, this the 24th day of July in the year of the Lord 2024.

By: _____

**Thomas Edward Clutts, Jr.**, Pro se
Fed. Reg. No.: 66193-112
FCI Butner II
Post Office Box 1500
Butner, NC  27509-4500
clutts@drivingexotic.com

## CERTIFICATE OF SERVICE

I swear/affirm/declare/certify that a true and correct copy of the foregoing has been served on the United States Attorney via the United States Postal Service, First-class service, postage prepaid, return receipt requested on this the 24th day of July in the year of the Lord 2024.  I have provided the foregoing to the United States Attorney by depositing the same into the institutional mailbox, located at FCI Butner II.

By: _____

**Thomas Edward Clutts, Jr.**, Pro se
Fed. Reg. No.: 66193-112
FCI Butner II
Post Office Box 1500
Butner, NC  27509-4500
clutts@drivingexotic.com

Page **20** of **20**

*Thomas Edward Clutts, Jr. v. Federal Bureau of Prisons, et al*                    **Central District of California**

# EXHIBIT "A"

# Next 19 Pages



U.S. Department of Justice
Federal Bureau of Prisons
*Federal Correctional Complex*
*Federal Correctional Institution II*
*P. O. Box 1500*
*Butner, North Carolina 27509*

February 20, 2024

**MEMORANDUM FOR: ADMINISTRATIVE REMEDY COORDINATOR CENTRAL OFFICE**

**FROM:**            D. Jarvis, Unit Manager

**SUBJECT:**         Remedy ID #1169610

On August 30, 2023 inmate 49695-177, Pittman, Randy D. submitted Remedy ID 1169610-R2 to the Mid-Atlantic Regional Office. The Regional Administrative Remedy Coordinator accepted Pittman's appeal. After accepting Pittman's appeal, the Regional Director extended the time in which to respond to the appeal. The extension of time afforded the Regional Director until October 29, 2023 to respond to Pittman's appeal.

Beginning October 26, 2023 Pittman began asking Unit Manager R. Griffin ("O" housing unit manager) to investigate whether the Regional Director had responded to Pittman's appeal. It wouldn't be until November 14, 2023 that Pittman was provided the receipt, showing the Regional Director had, in-fact, extended the time in which to respond and the Extension of Time receipt showed the Regional Director's response due date was October 29, 2023.

On November 15, 2023 Pittman filed his Central Office appeal (Remedy ID 1169610-A1). On November 27, 2023 the Central Office received Pittman's appeal. The Central Office Administrative Remedy Coordinator rejected Pittman's on December 11, 2023 citing four (4) reasons. They include:
01. The appeal is untimely.
02. Pittman should provided proof that the "untimely" appeal was not his fault.
03. Pittman did not provide the BP-9 and the Warden's response.
04. Pittman did not provide the BP-10 and the Regional Director's response.

This memorandum is to correct the record and prove that it was not Pittman's fault that there was any untimely filing. In addition, this memorandum should provide the Central Office with evidence that Pittman's appeal should be accepted even without the BP-9, the Warden's response, the BP-10 or the Regional Director's response.

The Administrative Remedy Coordinator, at FCI Butner II (BTF) has no record of receiving Pittman's Regional Appeal. There is no log of this appeal having been returned to the institution from the Regional Director. There is no evidence that Pittman's Unit Team ever received the Regional Director's response nor disseminated the same to him. Therefore, Pittman's Regional Appeal was never responded to or returned to him.

The Program Statement makes it clear that if, at any level, the timeframe to respond, including extension, expires and the inmate has not received any response, the inmate can construe this as a denial of relief sought at that level. When Pittman received the Extension of Time receipt, on November 14, 2023, it confirmed the Regional Director's response was due on October 29, 2023. Because November 14, 2023 is beyond the Regional Director's time to respond, Pittman construed this as a denial of relief sought. Therefore, Pittman filed his Central Office Appeal on November 15, 2023. The Central Office received the Central Office Appeal on November 27, 2023, therefore Pittman's Central Office Appeal was not "untimely."

To clarify the reason Pittman did not provide the BP-9, the Warden's response, the BP-10 or the Regional Director's response is simple. Pittman provided the BP-9 and Warden's response when he filed his Regional Appeal. Because the Regional Director never delivered Pittman a response to his BP-10, it would be impossible for Pittman to provide the BP-9 or the Warden's response. Because Pittman never received the BP-10 or the Regional Director's response, it would be impossible for Pittman to provide this to the Central Office in his appeal.

This memorandum shall clarify that Pittman's "untimely" Central Office Appeal is not his fault. This memorandum shall clarify that it is physically impossible for Pittman to provide the BP-9, the Warden's response, the BP-10 or the Regional Director's response because Pittman did not receive any response from the Regional Director and since the Regional Director did not send Pittman's BP-9 or the Warden's response, he cannot provide something he doesn't have.

I trust this memorandum provides the Central Office with the requested information. This Staff Verification is being provided to Pittman to allow him to move forward with his Central Office Appeal.



U.S. Department of Justice
Federal Bureau of Prisons
*Federal Correctional Complex*
*Federal Correctional Institution II*
*P. O. Box 1500*
*Butner, North Carolina 27509*

February 29, 2024

**MEMORANDUM FOR: ADMINISTRATIVE REMEDY COORDINATOR**
**CENTRAL OFFICE**

**FROM:**            D. Jarvis, Unit Manager

**SUBJECT:**            Remedy ID #116910-R2; 1173464-R1; 1173465-R1

This staff memorandum pertains to three administrative remedy responses. On Tuesday February 27, 2024, inmate Pittman, Randy register number 49695-177, received Regional Appeal responses to Remedy ID numbers: 119610-R2, dated October 12, 2023; 1173464-R1 dated January 12, 2024; and 1173465-R1 dated February 02, 2024. While the time to file a Central Office appeal has elapsed, this staff memorandum should allow inmate Pittman to appeal to the Central Office. Inmate Pittman shouldn't be considered "untimely" because the delay in filing his appeal was not his fault. On February 29, 2024, inmate Pittman was with the BP-11 forms and copies of this staff memorandum. Inmate Pittman's timeframe to file his appeal should begin today. I trust this staff memorandum rectifies any discrepancies pertaining to the timeframe for which inmates must file a Central Office Appeal.

EXTENSION OF TIME FOR RESPONSE - ADMINISTRATIVE REMEDY

DATE: NOVEMBER 14, 2023

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      MID-ATLANTIC REGIONAL OFFICE

TO  : RANDY DEWAYNE PITTMAN, 49695-177
      BUTNER MED II FCI    UNT: 3 GP      QTR: O01-093L

ADDITIONAL TIME IS NEEDED TO RESPOND TO THE REGIONAL APPEAL
IDENTIFIED BELOW.  WE ARE EXTENDING THE TIME FOR RESPONSE AS PROVIDED
FOR IN THE ADMINISTRATIVE REMEDY PROGRAM STATEMENT.

REMEDY ID        : 1169610-R2
DATE RECEIVED    : AUGUST 30, 2023
RESPONSE DUE     : OCTOBER 29, 2023
SUBJECT 1        : RESIDENTIAL REENTRY CENTER REFERRALS
SUBJECT 2        :

RECEIVED 1-2-24

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: DECEMBER 11, 2023

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      CENTRAL OFFICE

TO  : RANDY DEWAYNE PITTMAN, 49695-177
      BUTNER MED II FCI     UNT: 3 GP      QTR: O01-093L
      P.O. 1500
      BUTNER, NC 27509


FOR THE REASONS LISTED BELOW, THIS CENTRAL OFFICE APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.


REMEDY ID       : 1169610-A1      CENTRAL OFFICE APPEAL
DATE RECEIVED   : NOVEMBER 27, 2023
SUBJECT 1       : RESIDENTIAL REENTRY CENTER REFERRALS
SUBJECT 2       :
INCIDENT RPT NO:

REJECT REASON 1: YOUR APPEAL IS UNTIMELY.  CENTRAL OFFICE APPEALS
                 MUST BE RECEIVED WITHIN 30 DAYS OF THE REGIONAL
                 DIRECTOR'S RESPONSE.  THIS TIME LIMIT INCLUDES MAIL TIME.

REJECT REASON 2: PROVIDE STAFF VERIFICATION STATING REASON UNTIMELY FILING
                 WAS NOT YOUR FAULT.

REJECT REASON 3: YOU DID NOT PROVIDE A COPY OF YOUR   INSTITUTION
                 ADMINISTRATIVE REMEDY REQUEST (BP-9) FORM OR   A COPY   -BOTH
                 OF THE (BP-09) RESPONSE FROM THE WARDEN.

REJECT REASON 4: YOU DID NOT PROVIDE A COPY OF YOUR   REGIONAL OFFICE
                 ADMINISTRATIVE REMEDY APPEAL (BP-10) FORM OR   A COPY - Both
                 OF THE (BP-10) RESPONSE FROM THE REGIONAL DIRECTOR.

EXTENSION OF TIME FOR RESPONSE - ADMINISTRATIVE REMEDY

DATE: APRIL 10, 2024

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      MID-ATLANTIC REGIONAL OFFICE

TO  : RANDY DEWAYNE PITTMAN, 49695-177
      BUTNER MED II FCI    UNT: 3 GP    QTR: Z04-201LAD

ADDITIONAL TIME IS NEEDED TO RESPOND TO THE REGIONAL APPEAL
IDENTIFIED BELOW.  WE ARE EXTENDING THE TIME FOR RESPONSE AS PROVIDED
FOR IN THE ADMINISTRATIVE REMEDY PROGRAM STATEMENT.

REMEDY ID       : 1173465-R1
DATE RECEIVED   : DECEMBER 18, 2023
RESPONSE DUE    : FEBRUARY 16, 2024
SUBJECT 1       : RELEASE PLANS - APPROVAL, GRATUITY, SUPERVISION
SUBJECT 2       :

EXTENSION OF TIME FOR RESPONSE - ADMINISTRATIVE REMEDY


DATE: APRIL 10, 2024



FROM: ADMINISTRATIVE REMEDY COORDINATOR
      CENTRAL OFFICE

TO  : RANDY DEWAYNE PITTMAN, 49695-177
      BUTNER MED II FCI    UNT: 3 GP    QTR: Z04-201LAD



ADDITIONAL TIME IS NEEDED TO RESPOND TO THE CENTRAL OFFICE APPEAL
IDENTIFIED BELOW.  WE ARE EXTENDING THE TIME FOR RESPONSE AS PROVIDED
FOR IN THE ADMINISTRATIVE REMEDY PROGRAM STATEMENT.


REMEDY ID      : 1173465-A1
DATE RECEIVED  : MARCH 12, 2024
RESPONSE DUE   : MAY 11, 2024
SUBJECT 1      : RELEASE PLANS - APPROVAL, GRATUITY, SUPERVISION
SUBJECT 2      :

Ppg0REGIONAL ADMINISTRATIVE REMEDY APPEAL
Part B - Response

Date Filed: August 30, 2023                    Remedy ID No.: 1169610-R2

You appeal the Warden's response to your administrative remedy. You are requesting additional time (181-258 days) in the Residential Reentry Center (RRC).

The Second Chance Act requires that pre-release RRC placement decisions be made on an individual basis in every inmate's case. The criteria for pre-release RRC Placement include: resources of the facility contemplated; the nature and circumstances of the offense; history and characteristics of the prisoner; statement by the court; and, any pertinent policy statement issued by the U.S. Sentencing Commission.

A review of your appeal reveals you are currently serving a 24-month sentence for Aggravated Identity Theft. Your unit team recommended a RRC placement of 1-90 days, and you refuse the placement.

The Warden adequately addressed your concern, and we find no reason to part from this decision.

Your appeal is denied. If you are dissatisfied with this response, you may appeal to the General Counsel, Federal Bureau of Prisons, 320 First Street, N.W., Washington, D.C. 20534. Your appeal must be received in the General Counsel's Office within 30 days from the date of this response.

OCT 1 2 2023
_____                    _____
Date                                        C. Gomez
                                            Regional Director
                                            Mid-Atlantic Region

REGIONAL ADMINISTRATIVE REMEDY APPEAL
Part B - Response

Date Filed: November 20, 2023          Remedy ID No.: 1173464-R1

You appeal the Warden's response to your administrative remedy.
You request $500.00 release gratuity upon your release.

As noted in the Warden's response, you will be reviewed prior to
your release.  You are encouraged to work with your unit team
regarding your release needs to include gratuity. As stated in
the Program statement 5873.06(7).a. states "an inmate is
eligible for a gratuity as determined by the availability of
personal and community resources.  Greater consideration may be
given to an inmate without funds or community resources".  You
also chose to deny halfway house placement, which would have
assisted you in obtaining release monies and transitional
services.

Your appeal is denied. If you are dissatisfied with this
response, you may appeal to the General Counsel, Federal Bureau
of Prisons, 320 First Street, N.W., Washington, D.C. 20534. Your
appeal must be received in the General Counsel's Office within
30 days from the date of this response.

_____JAN 1 2 2024_____
Date

C. Gomez
Regional Director
Mid-Atlantic Region

REGIONAL ADMINISTRATIVE REMEDY APPEAL
Part B - Response

Date Filed: December 18, 2023          Remedy ID No.: 1173465-R1

You appeal the Warden's response to your administrative remedy. You request to have transportation to your "legal residence" when you discharge.

Per Program Statement, <u>5873.06, Release Gratuities, Transportation, and Clothing</u>: Transportation will be provided to an inmate's place of conviction, or to his/her legal residence within the United States or its territories. If an inmate chooses to use transportation other than what the Bureau provides, the inmate or the inmate's family must pay the entire transportation cost; the Bureau will absorb no part of that cost.

Upon review, your legal residence is listed within the Northern District of California, not in the Northern District of Alabama. as you claim. Additionally, a request to transfer/relocate you to the Northern District of Alabama has been denied by the United States Probation Office in the Northern District of Alabama.  We find no reason to depart from their request.

Your appeal is denied.  If you are dissatisfied with this response, you may appeal to the General Counsel, Federal Bureau of Prisons, 320 First Street, N.W., Washington, D.C. 20534.  Your appeal must be received in the General Counsel's Office within 30 days from the date of this response.

_____          _____
        FEB 0 2 2024
Date                                    C. Gomez
                                        Regional Director
                                        Mid-Atlantic Region

U.S. Department of Justice
Federal Bureau of Prisons
FCC Butner

Request for Administrative Remedy
Part B - Response

---

Admin Remedy Number:    1169610-F1

---

This is in response to your Request for Administrative Remedy received in my office, wherein you are requesting 181-270 days Residential Reentry Placement (RRC) Placement.

An investigation reveals you were reviewed for RRC during your Program Review on May 25, 2023. During your review, it was discussed you would be recommended for 1-90 days RRC placement due to multiple probation violations and your 24-month sentence for new criminal conduct. The importance of RRC placement and the benefits it provides was explained to you. However, you refused to sign the RRC Agreement form as well as your Progress Report, Supervised Release Plan, and your Program Review. You also informed your Case Manager you were refusing RRC placement. A declination memorandum was generated and placed in your central file.

Based on the above information, your Request for Administrative Remedy is denied.

If you are dissatisfied with this response, you may appeal to the Regional Director, Federal Bureau of Prisons, Mid-Atlantic Regional Office, 302 Sentinel Drive, Suite 200, Annapolis Junction, MD 20701. Your appeal must be received in the Regional Office within 20 calendar days from the date of this response.


_For ZZ_____                              _____8/17/23_____
L. B. Kelly, Warden                                   Date

U.S. Department of Justice
Federal Bureau of Prisons
FCC Butner

Request for Administrative Remedy
Part B - Response

---

**Admin Remedy Number:** 1173464-F2

---

This is in response to your Request for Administrative Remedy received in my office, wherein you request the Warden authorize a release gratuity of $500 to you upon your release.

A review of your request reveals on August 22, 2023, you received a response advising you will be reviewed six months prior to your release date. Currently, your current release date is May 8, 2024. You will be reviewed in December 2023.

Program statement 5873.06 (7). a. states, "An inmate is eligible for a gratuity as determined by the availability of personal and community resources. Greater consideration may be given to an inmate without funds or community resources." Based on your need and financial resources, a discretionary gratuity up to the amount permitted by statute may be granted.

Based on the above information, this response to your Request for Administrative Remedy is for informational purposes only.

If you are dissatisfied with this response, you may appeal to the Regional Director, Federal Bureau of Prisons, Mid-Atlantic Regional Office, 302 Sentinel Drive, Suite 200, Annapolis Junction, MD 20701. Your appeal must be received in the Regional Office within 20 calendar days from the date of this response.

L. B. Kelly, Warden

11/7/2023
Date

**U.S. Department of Justice**
**Federal Bureau of Prisons**
**FCC Butner**

**Request for Administrative Remedy**
**Part B - Response**

**Admin Remedy Number**: 1173465-F2

This is in response to your Request for Administrative Remedy received in my office, you request to be released to a specific address.

Program Statement 5873.06 Release Gratuities, Transportation, and Clothing states that "Transportation will be provided to an inmate's place of conviction, or to his/her legal residence within the Unit States or its territories". The above referenced program statement further states "If an inmate chooses to use transportation other than what the Bureau provides, the inmate or the inmate's family must pay the entire transportation cost; the Bureau will absorb no part of that cost".

Based on the above information, this response to your Request for Administrative Remedy is for informational purposes only.

If you are dissatisfied with this response, you may appeal to the Regional Director, Federal Bureau of Prisons, Mid-Atlantic Regional Office, 302 Sentinel Drive, Suite 200, Annapolis Junction, MD  20701. Your appeal must be received in the Regional Office within 20 calendar days from the date of this response.

_FCR ZZ_____
L. B. Kelly, Warden

___11/16/2023____
Date

November 14, 2023

Randy D. Pittman
Fed. Reg. No.: 49695-177
FCI Butner II
P.O. Box 1500
Butner, NC 27509-4500

RECEIVED
NOV 18 2023
By_____

Subject: 1169610-R3

    I previously filed an Administrative Remedy Appeal. The Remedy ID is 1169610-R3 and this office rejected the R3 appeal stating an extension had been obtained and the new response date was October 26, 2023.

    As the record will reveal October 26, 2023 passed no less than 19 days ago. I get mail from Maryland in two or three days. As of today I've still not received any response for the appeal I submitted in August.

    If I do not receive a response by November 17, 2023 I'll construe no response as a denial of relief requested then move on to the Central Office Appeal.

    I thank you in advance for your time, understanding and cooperation. I trust you'll immediately require your staff to provide me a written response to my Regional Appeal.

Sincerely,

Randy D. Pittman



February 09, 2024

Randy D. Pittman
Reg. No.: 49695-177
FCI Butner II
P.O. Box 1500
Butner, NC 27509

Subject: Regional Appeal Numbers 1173464-R1 and 1173465-R1 — Responses Due (Past Due)

To Whom This May Concern:

I am writing this letter as it pertains to two (2) Regional Administrative Remedy Appeals. The first Remedy ID is 1173464-R1 and requests $500.00 in release gratuity when I discharge. The Regional Director only had until January 16, 2024 to respond. This date includes the extension of time request.

The second Remedy ID is 1173465-R1 and requests the BOP provide me transportation to my "legal residence" at the time I discharge. I submitted my Regional Appeal on December 14, 2023 and I expect the time for the Regional Director to respond has also elapsed.

I am demanding that the Regional Director follow the Program Statement and immediately furnish me with responses to both Regional Administrative Remedy Appeals mentioned in this letter. I understand the BOP is actively retaliating against me for attempting to access the court. This retaliation is not limited to the purposeful and the intentional interference with the Administrative Remedy

Page 01 of 02

The record will reveal I'm requesting RRC placement.
But, I only have 175 days left to serve so I'm requesting
this office expedite this request for obvious reasons.

I thank you for your time, understanding and
cooperation. I trust that you'll grant me the relief sought
and place me in the RRC immediately.

Sincerely,

Randy D. Pittman

November 15, 2023

Randy D. Pittman
Fed. Reg. No. 49695-177
FCI Butner II
P.O. Box 1500
Butner, NC 27509-4500

Subject: Remedy ID: 1169610-A1

To Whom This May Concern:

This Cover Page pertains to the aforementioned Remedy ID. I'm not able to provide the BP-8, BP-9 or BP-10 because I filed all of those documents with the Regional Director in the Mid-Atlantic Region.

As you'll see, I was finally provided the receipt to show that the Regional Director got an extension to respond to my Appeal. As you'll also see, the Regional Director only had until October 29, 2023 to respond to my Appeal.

Program Statement 1330.18 (12) 542.18 specifically addresses the remedy for no response. It states: "If the inmate does not receive a response within the time allotted for a reply, including extension, the inmate may consider the absence of a response to be a denial at that level."

My Regional Appeal was accepted on August 30, 2023. The Regional Director has not responded and I'm filing my Central Office appeal to seek relief. Because time is of the essence I request the General Counsel expedite this Appeal because all other levels of this process have not attempted to resolve anything.

-- NEXT PAGE --

Program. The fact that I was due a response by January 16, 2024 and it is now February 09, 2024 confirms my suspicions regarding this type of retaliation.

I trust this letter will be processed immediately and I will receive a prompt and professional response to my inquiry. Further, I trust that I'll immediately receive responses to both aforementioned Remedy ID numbers. I thank you in advance for your time, understanding and cooperation.

Sincerely,

Randy D. Pittman
49695-177



**UNITED STATES GOVERNMENT**
**Federal Bureau of Prisons**
*Mid-Atlantic Regional Office*
*302 Sentinel Drive, Suite 200*
*Annapolis Junction, MD 20701*

February 16, 2024

Randy D. Pittman
Reg. No. 49695-177
FCI Butner II
P.O. Box 15000
Butner, NC 27509

   RE:  Administrative Remedy Status
   Remedy: 1173464-R1 & 1173465-R1

Dear Mr. Pittman:

  This will acknowledge receipt of your letter regarding the above administrative remedies.

  These remedies have been responded to and closed as of 1-12-2024 and 2-2-2024. Please see enclosed copies of the Regional Director's responses.

       Sincerely,

       *M. Hurey, for*

       Michael D. Frazier
       Regional Counsel
       Mid-Atlantic Region

# EXHIBIT "B"

# Next 2 Pages



U.S. Department of Justice
Federal Bureau of Prisons
*Federal Correctional Complex*
*Federal Correctional Institution II*
*P. O. Box 1500*
*Butner, North Carolina 27509*

February 20, 2024

**MEMORANDUM FOR: ADMINISTRATIVE REMEDY COORDINATOR
CENTRAL OFFICE**

**FROM:**                    D. Jervis, Unit Manager

**SUBJECT:**              Remedy ID #1169610

On August 30, 2023 inmate 49695-177, Pittman, Randy D. submitted Remedy ID 1169610-R2 to the Mid-Atlantic Regional Office.  The Regional Administrative Remedy Coordinator accepted Pittman's appeal.  After accepting Pittman's appeal, the Regional Director extended the time in which to respond to the appeal.  The extension of time afforded the Regional Director until October 29, 2023 to respond to Pittman's appeal.

Beginning October 26, 2023 Pittman began asking Unit Manager R. Griffin ("O" housing unit manager) to investigate whether the Regional Director had responded to Pittman's appeal.  It wouldn't be until November 14, 2023 that Pittman was provided the receipt, showing the Regional Director had, in-fact, extended the time in which to respond and the Extension of Time receipt showed the Regional Director's response due date was October 29, 2023.

On November 15, 2023 Pittman filed his Central Office appeal (Remedy ID 1169610-A1).  On November 27, 2023 the Central Office received Pittman's appeal.  The Central Office Administrative Remedy Coordinator rejected Pittman's on December 11, 2023 citing four (4) reasons.  They include:
01. The appeal is untimely.
02. Pittman should provided proof that the "untimely" appeal was not his fault.
03. Pittman did not provide the BP-9 and the Warden's response.
04. Pittman did not provide the BP-10 and the Regional Director's response.

This memorandum is to correct the record and prove that it was not Pittman's fault that there was any untimely filing.  In addition, this memorandum should provide the Central Office with evidence that Pittman's appeal should be accepted even without the BP-9, the Warden's response, the BP-10 or the Regional Director's response.

The Administrative Remedy Coordinator, at FCI Butner II (BTF) has no record of receiving Pittman's Regional Appeal.  There is no log of this appeal having been returned to the institution from the Regional Director.  There is no evidence that Pittman's Unit Team ever received the Regional Director's response nor disseminated the same to him.  Therefore, Pittman's Regional Appeal was never responded to or returned to him.

The Program Statement makes it clear that if, at any level, the timeframe to respond, including extension, expires and the inmate has not received any response, the inmate can construe this as a denial of relief sought at that level.  When Pittman received the Extension of Time receipt, on November 14, 2023, it confirmed the Regional Director's response was due on October 29, 2023.  Because November 14, 2023 is beyond the Regional Director's time to respond, Pittman construed this as a denial of relief sought.  Therefore, Pittman filed his Central Office Appeal on November 15, 2023.  The Central Office received the Central Office Appeal on November 27, 2023, therefore Pittman's Central Office Appeal was not "untimely."

To clarify the reason Pittman did not provide the BP-9, the Warden's response, the BP-10 or the Regional Director's response is simple.  Pittman provided the BP-9 and Warden's response when he filed his Regional Appeal.  Because the Regional Director never delivered Pittman a response to his BP-10, it would be impossible for Pittman to provide the BP-9 or the Warden's response.  Because Pittman never received the BP-10 or the Regional Director's response, it would be impossible for Pittman to provide this to the Central Office in his appeal.

This memorandum shall clarify that Pittman's "untimely" Central Office Appeal is not his fault.  This memorandum shall clarify that it is physically impossible for Pittman to provide the BP-9, the Warden's response, the BP-10 or the Regional Director's response because Pittman did not receive any response from the Regional Director and since the Regional Director did not send Pittman's BP-9 or the Warden's response, he cannot provide something he doesn't have.

I trust this memorandum provides the Central Office with the requested information.  This Staff Verification is being provided to Pittman to allow him to move forward with his Central Office Appeal.

# EXHIBIT
# "C"

# Next 2 Pages

November 15, 2023

Randy D. Pittman
Fed. Reg. No.: 49695-177
FCI Butner II
P.O. Box 1500
Butner, NC 27509-4500

Subject: Remedy ID: 1169610-A1

To Whom This May Concern:

This Cover Page pertains to the aforementioned Remedy ID. I'm not able to provide the BP-8, BP-9 or BP-10 because I filed all of those documents with the Regional Director in the Mid-Atlantic Region.

As you'll see, I was finally provided the receipt to show that the Regional Director got an extension to respond to my Appeal. As you'll also see, the Regional Director only had until October 29, 2023 to respond to my Appeal.

Program Statement 1330.18 (12) 542.18 specifically addresses the remedy for no response. It states: "If the inmate does not receive a response within the time allotted for a reply, including extension, the inmate may consider the absence of a response to be a denial at that level."

My Regional Appeal was accepted on August 30, 2023. The Regional Director has not responded and I'm filing my Central Office appeal to seek relief. Because time is of the essence I request the General Counsel expedite this Appeal because all other levels of this process have not attempted to resolve anything.

-- NEXT PAGE --

Program. The fact that I was due a response by January 16, 2024 and it is now February 09, 2024 confirms my suspicions regarding this type of retaliation.

I trust this letter will be processed immediately and I will receive a prompt and professional response to my inquiry. Further, I trust that I'll immediately receive responses to both aforementioned Remedy ID numbers. I thank you in advance for your time, understanding and cooperation.

Sincerely,

Randy D. Pittman
49695-177

Page 02 of 02

# EXHIBIT "D"

# Next 2 Pages



U.S. Department of Justice
Federal Bureau of Prisons
*Federal Correctional Complex*
*Federal Correctional Institution II*
*P. O. Box 1500*
*Butner, North Carolina 27509*

February 20, 2024

**MEMORANDUM FOR: ADMINISTRATIVE REMEDY COORDINATOR**
**CENTRAL OFFICE**

**FROM:**          D. Jarvis, Unit Manager

**SUBJECT:**       Remedy ID #1169610

On August 30, 2023 inmate 49695-177, Pittman, Randy D. submitted Remedy ID 1169610-R2 to the Mid-Atlantic Regional Office.  The Regional Administrative Remedy Coordinator accepted Pittman's appeal.  After accepting Pittman's appeal, the Regional Director extended the time in which to respond to the appeal.  The extension of time afforded the Regional Director until October 29, 2023 to respond to Pittman's appeal.

Beginning October 26, 2023 Pittman began asking Unit Manager R. Griffin ("O" housing unit manager) to investigate whether the Regional Director had responded to Pittman's appeal.  It wouldn't be until November 14, 2023 that Pittman was provided the receipt, showing the Regional Director had, in-fact, extended the time in which to respond and the Extension of Time receipt showed the Regional Director's response due date was October 29, 2023.

On November 15, 2023 Pittman filed his Central Office appeal (Remedy ID 1169610-A1).  On November 27, 2023 the Central Office received Pittman's appeal.  The Central Office Administrative Remedy Coordinator rejected Pittman's on December 11, 2023 citing four (4) reasons.  They include:
01. The appeal is untimely.
02. Pittman should provided proof that the "untimely" appeal was not his fault.
03. Pittman did not provide the BP-9 and the Warden's response.
04. Pittman did not provide the BP-10 and the Regional Director's response.

This memorandum is to correct the record and prove that it was not Pittman's fault that there was any untimely filing.  In addition, this memorandum should provide the Central Office with evidence that Pittman's appeal should be accepted even without the BP-9, the Warden's response, the BP-10 or the Regional Director's response.

The Administrative Remedy Coordinator, at FCI Butner II (BTF) has no record of receiving Pittman's Regional Appeal.  There is no log of this appeal having been returned to the institution from the Regional Director.  There is no evidence that Pittman's Unit Team ever received the Regional Director's response nor disseminated the same to him.  Therefore, Pittman's Regional Appeal was never responded to or returned to him.

The Program Statement makes it clear that if, at any level, the timeframe to respond, including extension, expires and the inmate has not received any response, the inmate can construe this as a denial of relief sought at that level.   When Pittman received the Extension of Time receipt, on November 14, 2023, it confirmed the Regional Director's response was due on October 29, 2023.   Because November 14, 2023 is beyond the Regional Director's time to respond, Pittman construed this as a denial of relief sought.   Therefore, Pittman filed his Central Office Appeal on November 15, 2023.   The Central Office received the Central Office Appeal on November 27, 2023, therefore Pittman's Central Office Appeal was not "untimely."

To clarify the reason Pittman did not provide the BP-9, the Warden's response, the BP-10 or the Regional Director's response is simple.   Pittman provided the BP-9 and Warden's response when he filed his Regional Appeal.   Because the Regional Director never delivered Pittman a response to his BP-10, it would be impossible for Pittman to provide the BP-9 or the Warden's response.   Because Pittman never received the BP-10 or the Regional Director's response, it would be impossible for Pittman to provide this to the Central Office in his appeal.

This memorandum shall clarify that Pittman's "untimely" Central Office Appeal is not his fault.   This memorandum shall clarify that it is physically impossible for Pittman to provide the BP-9, the Warden's response, the BP-10 or the Regional Director's response because Pittman did not receive any response from the Regional Director and since the Regional Director did not send Pittman's BP-9 or the Warden's response, he cannot provide something he doesn't have.

I trust this memorandum provides the Central Office with the requested information.   This Staff Verification is being provided to Pittman to allow him to move forward with his Central Office Appeal.



