UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

THOMAS EDWARD CLUTTS JR.,            )
                Plaintiff            )
                                     )
                                     )
      v.                             )  No. 2:24-cv-1291
                                     )
UNITED STATES OF AMERICA, et al.,    )
                Defendants           )

BRIEF IN SUPPORT OF SECOND COMPLAINT

FILED
CLERK, U.S. DISTRICT COURT

OCT 21 2024

CENTRAL DISTRICT OF CALIFORNIA
BY      ASH        DEPUTY

PRELIMINARY STATEMENT

After six days of constant suffering due to a rapidly deteriorating arm, Mr. Clutts' pleas for help were finally answered when he was allowed to be seen by a doctor. At first, it was the fault of the Nurses whom failed to report that Mr. Clutts was crying out for help in extreme pain while flesh eating bacteria ate away at his arm. Then it was the fault of the doctor whom ignored Mr. Clutts once he found out that Mr. Clutts was having a medical emergency. They witnessed the worsening redness and swelling, and was made aware that Mr. Clutts could move only a couple of fingers, yet did nothing to help for several days.

Because of their indifference and negligence in allowing this necrotizing bacteria to freely consume Mr. Clutts' arm, to the point where an outside hospital thought amputation was the only viable option to preserve Mr. Clutts' life, his condition progressed to the point that he had to suffer through several surgeries and months in the hospital. The aftermath following the surgeries were catastrophic, as Mr. Clutts has no mobility in his arm and he still cannot move more than a couple of fingers.

(1)

And since the arm destroyed was the arm primarily used for day-
to-day activities, the most basic of tasks seem impossible,
adding to the phychological damage he now experiences because
of what he went through.  All of this is because of the negligence
of staff, and their indifference to the suffering of Mr. Clutts.

     1.  Mr. Clutts is a pro-se litigant and this Court
         should entitle his pleadings to a more liberal
         standard

Mr. Clutts is a pro-se litigant and this Court should thus
entitle his pleadings to a more liberal standard than what this
Court is accustomed to, and should construe any such pleadings
for meaning and intent wherever there exists deficiencies in
form or structure.  Erickson v. Pardus, 551 U.S. 89, 94, 127
S. Ct. 2197 (per curium).

(2)

2. **Defendant's Pena, Johnston, Fields, and Gulani violated Mr. Clutts' right against cruel and unusual punishment, and Mr. Clutts should be awarded damages**

The Eighth Amendment of the Constitution requires that prison officials "provide humane conditions of confinement," Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970 (1994). This includes "reasonable measures to guarantee the safety of the inmates[,]" id., and "reasonably adequate" medical care. Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982). A petitioner arguing that a prison official acted with deliberate indifference to his serious medical need must satisfy both prongs of a two-part test. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000).

First is the objective prong wherein a petitioner must show that his condition was sufficiently serious enough to form the basis for the Eighth Amendment violation, id., and that the defendant have actual knowledge of a serious medical condition. Farmer, 511 U.S. at 837. Next, a petitioner must then meet the requirements of the subjective prong. To do this, he must "(a) show a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citation omitted). "Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment[.]" id. If that delay amounts to deliberate indifference, that petitioner must show that further injury was the result, see Shapley v. Nevada Bd. of State Prison Commin., 766 F.2d 404, 407 (9th Cir. 1985), or that the delay resulted in the "unnecessary and wanton infliction of pain." Jett, 439 F.3d at 1096. Finally, the harm

(3)

need not have been ultimately averted for this to hold true. Farmer, 511 U.S. at 844; Peralta v. Dillard 744 F.3d 1076, 1084-85 (9th Cir. 2014) (en banc).

### A. Mr. Clutts' medical condition satisfies the objective portion of the test

The fact that a bacteria ate away Mr. Clutts' arm to the point where he cannot move any part of his right arm save for a few fingers speaks to the seriousness of the disease. The fact that the medical problem was severe enough that he was immediately sent to the hospital, when he was finally allowed to get medical help, and underwent several surgeries while enduring four months in the hospital speaks to the seriousness of his medical need. The fact that he was in constant agony speaks to necessity of getting medical help. If he were allowed to see a doctor, much of the damage could have been avoided. He was not allowed and he was damaged as a result.

In a district court case out of Maryland, a Plaintiff brought suit in federal court complaining that he had contracted necrotizing fasciitis, and that the defendant was negligent in their response. Kaylor v. Arrisueno, 2024 U.S. Dist. LEXIS 84250, Case No. 21-01164-BAH (D.C. Md. May 8, 2024). On behalf of the plaintiff, a declaration was filed by a doctor Freed, testifying that this is a disease where both "life and limb are at stake." id. at * 3. The district court goes on to state that the expert witnesses will opine that the standard of care for this condition requires an emergency surgical consultation. id. The seriousness of Mr. Clutts' medical condition is supported

(4)

by common sense, the record, and by statements made by professionals in the field of medicine. It is for these reasons that Mr. Clutts can prove that his condition was sufficiently serious to form the basis for a Eighth Amendment violation. Johnson, 217 F.3d at 731.

B.    The actions of Defendant's Johnston, Pena, Fields, and Gulani meets the criteria for the subjective part of the test

Day after day, Mr. Clutts' arm got progressively more swollen and more red, while he slowely began losing mobility of his fingers. The Defendant's might not have had a name for the disease, or had not known that it was literally eating away at his flesh, or that the threat was to his life and not localized to a single appendage. But the Nurses had seen the severity of his symptoms and the alarming progress as they presented themselves, yet they took no action to help him. The same is true for the doctor whom was notified of the issue, eventually, yet similarly did nothing to help him once he found out. In this, they knew of a risk to Mr. Clutts , and their actions were insufficient to mitigate the risk of harm. The injury to Mr. Clutts did not have to be this bad, but the Defendant's allowed it to be so, and now, Mr. Clutts will suffer the harm done for the rest of his life. And because of these facts, the Defendant's acted with a sufficiently culpable state of mind.

Part one is to figure out if the Defendant's had actual knowledge of the risk to Mr. Clutts .. If medical staff did not

(5)

realize how sick Mr. Clutts was, or had any idea of the diagnoses, their action may not amount to deliberate indifference. See Toguchi v. Chung, 391 F.3d 1051, 1059-60 (9th Cir. 2004). But, that is not to give them a free pass, as even if they did not know exactly what was wrong with Mr. Clutts,, Mr. Clutts need only prove that the defendant's knew that he had a serious problem and that they disregarded it. See, e.g., Dominguez v. Correctional Medical Services, 555 F.3d 543, 550 (6th Cir. 2009) (Nurse did not know that Plaintiff could become quadriplegic, just that she be shown to have known that "serious risks accompany heat-related illness and dehydration"). In this, if a risk to Mr. Clutts was obvious, than knowledge by the defendant's can be established. Farmer, 511 U.S. at 842-43.

The sole reason that the Nurses supplied as to why they did nothing while Mr. Clutts begged for help, was that policy allowed Mr. Clutts to see a doctor only once a week on a Wednesday, and that he just had to suffer until then. Mr. Clutts is unsure if there were any exceptions to that rule such as if an inmate's condition qualifies as an emergency. If there was not, then, as members of the medical staff, the Nurses had the obligation to report Mr. Clutts' condition to someone whom could have provided him medical assistance. Supposedly, the Nurses eventually did inform Dr. Gulani regarding Mr. Clutts' condition, but in the meantime they took no action.

It cannot be said that none of the defendant's understood the risk posed to Mr. Clutts. This is especially true of the Doctor if he was indeed made aware of Mr. Clutts' symptoms. He experienced diminished mobility in his fingers as the swelling

(6)

got worse.  When Mr. Clutts finally went to see the same doctor that refused to see him, his arm was damaged to the point that a rush to the hospital was immediately ordered.  The fact that Dr. Gulani so quickly identified the issue proves that he knew, just by hearing about the symptoms, that Mr. Clutts  was in emergency status.  Further, since Mr. Clutts  was complaining of constant, agonizing pain is sufficient to establish that the Nurses knew something was wrong with him. See, e.g., Chavez v. Cady, 207 F.3d 901, 906 (7th Cir. 2000).  Thus, defendant's knew the risk to Mr. Clutts. and allowed the unnecessary and wanton infliction of pain.

Now that Mr. Clutts  can prove that the defendant's knew about the risk, he now must show that they ignored that risk. As stated before, their entire response was that they could not do anything to help him, and they then proceeded to do nothing. It may be true that is was not within the Nurses capacity to provide any direct medical help to Mr. Clutts  but they should have reported the emergency situation much sooner than what they did.  When Dr. Gulani was notified of the situation, he should have immediately moved to provide medical help to Mr. Clutts.

Because of this inaction, Mr. Clutts  was further harmed after he made the initial complaint, as the disease was allowed to continue its destruction without the benefit of any antagonistic forces.  As per his affidavit, what started off as a relatively minor issue was rapidly uncovered to be a major medical emergency. The necrotizing fasciitis did not cause all of Mr. Clutts' tissue destruction all at once; it was a gradual process that happened

over time - the time that could have been spent treating Mr. Clutts instead of ignoring him. As the Doctor in the Kaylor case reported, its fast progress requires surgical intervention, as "[t]he earlier you operate the less tissue there is lost and the more likely it is that the patient will return to full function in the future." Kaylor, at * 3.

For these reasons, the actions of Defendant's Johnston, Pena, Fields, and Culani satisfies the subjective portion of the test.

> C.    Mr. Clutts is eligible for damages under Bivens
>        following the Egbert case

For years, Constitutional violations committed against an inmate by a federal employee created a legitimate cause of action under Bivens. That was until the Egbert case was decided, which narrowed the circumstances in which a Petitioner qualifies for constitutional claims of damages against a federal official. Egbert v. Boule, 142 S. Ct. 1793, 213 L. Ed. 2d 54 (2022). First, this Court must determine whether Plaintiff's case presents a new Bivens context," and if it does, whether "there are special factors indicating the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." And, "if there is even a single reason to pause before applying Bivens in a new context, a court may not recognize a Bivens remedy." id. at 1803.

A case presents a new context if it "is different in a meaningful way from the previous Bivens cases decided by [the

(8)

Supreme] Court," Ziglar v. Abbasi, 582 U.S. 120, 137 S. Ct. 1843, 1859 (2017). As of now, the Supreme Court has recognized three cases that may proceed under Bivens: the Bivens claim itself, which allows for damages for unlawful search and seizure under the Fourth Amendment; in Davis v. Passman, for a Fifth Amendment violation claiming dismissal based on sex; and in Carlson v. Green, for an Eighth Amendment claim for failure to provide adequate medical care.

Beyond those three cases, the Supreme Court declined "to create an exhaustive list of differences that are meaningful enough to make a given context a new one[.]" Ziglar, 137 S. Ct. at 1859-60. Even so, they provided instructive examples:

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous Bivens cases did not consider. Abbasi, 137 S. Ct. at 1860.

Be that the case, the Supreme Court has stated that while "the new-context inquiry is easily satisfied," the Supreme Court also cautioned that "[s]ome differences, of course, will be so trivial that they will not suffice to create a new Bivens context." Ziglar, 582 U.S. at 149.

One such instance of a difference so trivial that it failed to give rise to a new context can be found in the Stanard case. In Stanard v. Dy, the Plaintiff contracted the Hepatitis C virus while housed within the BOP. When initially offered treatment, the Plaintiff refused due to a mental health crisis. 88 F.4th

(9)

811 (9th Cir. 2023).  Some time later, after the crisis had ended, he had requested the treatment that was offered to him, but was now told that he did not qualify.  He was transferred institutions and was told that his medications would start "after a short wait."  His treatment was delayed.  The Ninth Circuit found that the Stanard case was most similar to Carlson, and like the Carlson case, the severity of the diseases experienced by both Plaintiff's were life threatening, and the life-threatening medical problems were both met with a delay in treatment, both factors in the new-context inquiry.  Even though the Plaintiff in the Carlson case had died whereas Stanard did not, the Ninth Circuit concluded that "even assuming that Stanard received less deficient care than the inmate in Carlson, that difference in degree is not a meaningful difference giving risk to a new context."  id. at 11.

Like the Plaintiff's in the Carlson and Stanard case, Mr. Clutts endured a life threatening disease that the doctors and nurses ignored.  The damage was done and Mr. Clutts lost the ability to move his right arm because of it.  He had complaied for several days before anyone decided to do anything about it.  The doctor should have known the severity of the issue as he immediately knew something was wrong with him to the point that he requested an immediate transfer to the hospital.  But he should have done something sooner, as the symptoms were already presented to him.  Thus, Mr. Clutts' case does not give rise to a new context as he fits squarely within the Carlson case.

(10)

D.    The criteria for Deliberate Indifference is met and Mr. Clutts should be awarded damages because of it

As before, this case mostly aligns to the Stanard and Carlson cases. This fact is relevant as those cases set the foundation when considering what cases are eligible for damages for claims of deliberate indiference to serious medical needs. Necrotizing fasciitis is undeniably serious, a fact that can be readily seen throughout his stay in the hospital for several surgeries. Doctors in other cases have confirmed this, that this is a disease that threatens both life and limb.

And as argued, all the Nurses and Doctors are guilty of this indifference at some point during the ordeal. Thus, both the objective and subjective component thus satisfying the requirement of the Ninth Circuit when raising claims of deliberate indifference. It is for this reason that Mr. Clutts should be awarded damages as he meets the criteria, and the Carlson case allows for it.

3.    The actions of the defendant's amounted to common law tort and Mr. Clutt's should be awarded damages because of it

Since Plaintiff's case arose while he was housed within the BOP in California, California law as to neglect and medical malpractice applies. Avina v. United States, 681 F.3d 1127, 1130 (9th Cir. 2012) ("Because [appellant's] tort claims are brought under the FTCA, and the events at issue occured in California, we apply California tort law.")

(11)

Under the laws of California, those whom claim negligence must meet each element of a four-part test.  Those are: "(1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damage)." Corales v. Bennett, 567 F.3d 554, 572 (9th Cir. 2009) (quoting McGarry v. Sax, 158 Cal. App. 4th 983, 994, 70 Cal. Rptr. 3d 519 (2008)).

To establish medical malpractice, "a plaintiff must state all of the following: (1) that the defendant was negligent; (2) that the plaintiff was harmed; and (3) that the defendant's negligence was a substantial factor in causing the plaintiff's harm." Ladd v. Cnty. of San Mateo, 12 Cal. 4th 913, 917, 50 Cal. Rptr. 2d 309, 911 P.2d 496 (1996).  "The standard of care in a medical malpractice case requires that medical service providers exercise that... degree of skill, knowledge and care ordinarily possessed and exercised by members of their profession under similar circumstances." Barris v. County of Los Angeles, 20 Cal. 4th 101, 108, 83 Cal. Rptr. 2d 145, 972 P.2d 966 (Cal. 1999).

A. The actions of the defendant's amounted to medical negligence and malpractice

If this court cannot find that the defendant's in this action were sufficiently culpable to the extent that their actions rose to a constitutional violation, the same cannot be said when the inquiry turns to negligence and malpractice. Mr. Clutts was in severe pain and was communicating that fact to several nurses (the defendant's) that were on-duty. They did not have to take the word of Mr. Clutts to determine if he was being honest or to determine if he was exaggerating the extent of his injuries. His arm was rapidly swelling, was becoming red, and he was losing mobility in his fingers.

Because the Nurses did not report the rapidly deteriorating condition of Mr. Clutts they committed negligence. And because the doctor did not, once he was informed of Mr. Clutts' serious medical need, assist Mr. Clutts or provide him any medical treatment, committed medical negligence and malpractice. The Nurses should have immediately reported the condition to Dr. Gulani, as a serious medical issue falls within the function of their job. They failed to do so and as a result flesh eating bacteria was allowed to eat away at Mr. Clutts' arm. "The earlier you operate the less tissue there is lost and the more likely it is that the patient will return to full function in the future." Kaylor, 2024 U.S. at *3. Now, Mr. Clutts has no mobility in the arm, and effectively no mobility in his fingers. In this, as to the Nurses, Mr. Clutts can prove that they were both neligent and that they committed malpractice.

(13)

If anything, once Mr. Gulani was made aware of the situation, it can be said that he was more culpable than the other defendant's in this action. As argued before, the fact that once he had seen Mr. Clutts, Mr. Gulani immediately ordered a transfer to the hospital shows that his condition was identifiable, and serious to the extent that surgical intervention was necessary. As per Kaylor, the standard of care in diseases such as this is urgent imaging and emergency surgical consult. 2024 at * 3. Instead of this, Mr. Clutts went several days without help or care. And, as stated above, this inaction (or breach of duty) caused harm to Mr. Clutts. It is for these reasons that Dr. Gulani committed medical negligence and malpractice.

## CONCLUSION

WHEREFORE, for the reasons stated above and in the complaint, this court shoule rule in favor of Mr. Clutts and GRANT him the relief requested in his complaint.

Date: 10/8/2024

_____

Thomas Clutts Jr.
# 66193-112
F.C.I. Butner Medium II
P.O. Box 1500
Butner, NC 27509

(14)

AFFIDAVIT OF THOMAS CLUTTS JR.

1) I, Thomas Clutts Jr., am the Plaintiff in this action, and declare (or certify, verify, or state) under penalty of perjury that the following is true and correct to the best of my knowledge.

2) I believe that it all began with a bug bite to my right arm. This was on either a Wednesday or Thursday. I noticed that my arm was a bit swollen and there was moderate pain in the right arm.

3) I woke up the next day with severe pain in the same arm. Further, my arm was very swollen and red. This is when I started to inform the medical staff that something was wrong with my arm and that I wanted to see the doctor. I believe this was Nurse Pena. She told me that it was likely Staph, and that I had to fill out a sick-call. Again, I complained about the pain and swelling to the Nurse on duty that night, without any help.

4) My complaints continue to the nurses on duty. Mainly this was done when the nurses came through to conduct "pill-call," when they pass out medication. All of the nurses told me that since I was in the "SHU" I could only see a doctor once a week on a Wednesday due to a policy implemented at the prison.

5) On Monday, my arm swelled up to the size of a football at the elbow. It was burning hot and red. I could not feel my fingers nor could I move several of them. When I complained this time I got the impression that the doctor was finally told about my condition, but that he was now the one refusing to see me.

6) Finally, on Wednesday, I was seen by a doctor. During this visit my cell was searched for contriband, which was consistent with statements made by officer's that I shared a needle with my cell-mate. I did not. Either way, throughout that day, I could barely walk. Officer Sears had to help stand me up when I was being searched in R&D.

7) After all the surgeries were over, I still had my arm bet I am unable to use it. I cannot perform the basic of tasks such as bathing, using the restroom, writing, eating, etc. I have almost no finger movement. The arm that was damaged was my primary arm.

8) The entire time I was told by the officer's that this was my fault and that I should not have shared a dirty needle. This was not caused by drugs, I did not inject anything by needle, and yet instead of helping me I was blamed. This whole experience has made me afraid of close spaces and afraid that I am going to laungish and die inside of a prison cell as the officers do not want to help if something is wrong with me. Everytime I look down at my arm and see the grafting through the skin I am reminded

(1)

of everything that I went through and have panic attacks.

9)  The Nurses that I complained to and received no help from were Nurses Pena, Johnston, and Fields. The Doctor was Gulani.

10) I had submitted a S-95 with the regional office on August 1, 2022; No. TRT-WXR-20220D6157.  To this day, it is still active.

11) I attempted to file an administrative grievance while housed in the same institution it happened in.  I was told that I could not receive one and if I had a problem then I need to file a tort.


Date: 10/6/2024

Thomas Clutts Jr.
F.C.I. Butner Medium II
P.O. Box 1500
Butner, NC 27509

(2)



Thomas Clutts   EC193-112
FCI 2
Po Box 1500
Butner N.C. 27505

United States District Court
Central district of California
255 East Temple Street, Room 180
Los Angeles, California 90012



FEDERAL CORRECTIONAL INST. #2
P.O. BOX 1500
BUTNER, NORTH CAROLINA 27509

DATE: _____ 10-11-24 GW

"SPECIAL/LEGAL MAIL"

The enclosed letter was processed through special
procedures for forwarding to you. The letter has be
neither opened or inspected. If the writer raises a q
or problem over which this facility has jurisdiction, y
may wish to return the material for further informati
or clarification. If the writer enclosed correspondenc
forwarding to another addressee, please return the
to the above address.