# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS EDWARD CLUTTS, JR., | No. 2:24-cv-01291-SPG-AJR |
| Plaintiff, | **REPORT AND RECCOMENDATION OF UNITED STATES MAGISTRATE JUDGE** |
| v. | |
| UNITED STATES OF AMERICA, ET AL., | |
| Defendants. | |

This Report and Recommendation is submitted to the Honorable Sherilyn Peace Garnett, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

## I.

## BACKGROUND

On October 21, 2024, Plaintiff Thomas Edward Clutts, Jr. ("Plaintiff"), a *pro se* federal prisoner now confined at the Federal Correctional Institution in Butner, North Carolina, filed the operative Second Amended Complaint ("SAC") against the

United States and four individuals who worked at the Federal Correctional Institution in Victorville, CA ("FCI Victorville") while Plaintiff was incarcerated there:  Dr. Gulani, Nurse Fields, Nurse Johnston, and Nurse Pena.  (Dkt. 31 at 1.)  Plaintiff asserts claims pursuant to Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971), and the Federal Tort Claims Act ("FTCA").  (Id.)  Plaintiff seeks declaratory and monetary relief.  (Dkt. 31 at 6-7.)

The Court reviewed the SAC and deemed it appropriate for service.  On November 1, 2024, the Court issued a Summons and Order Directing Service of Plaintiff's SAC by the U.S. Marshals Service.  (Dkts. 39-40.)  On January 10, 2025, the U.S. Marshals Service filed a process receipt and return showing completed service of the SAC on Nurse Ashley Pena.  (See Dkt. 43.)  On January 28, 2025, the U.S. Marshals Service filed a process receipt and return showing completed service of the SAC on the United States of America.  (Dkt. 51.)  However, the U.S. Marshal's Service has not able to complete service of the SAC on Nurse Johnston, Nurse Fields, or Doctor Gulani (the "Unserved Defendants") because they no longer work for the Federal Bureau of Prisons (the "BOP").  (Dkts. 48-50.)  Accordingly, on May 19, 2025, the Court authorized limited discovery so that Plaintiff could obtain the Unserved Defendants' last known addresses or the identity of their personal representatives.  (Dkt. 61.)

On April 9, 2025, Defendants Pena and the United States ("Defendants") filed a Motion to Dismiss the SAC (the "Motion").  (Dkt. 56.)  On May 16, 2025, Plaintiff filed an Opposition to the Motion (the "Opposition").  (Dkt. 60.)  On May 29, 2025 Defendants filed a Reply in support of their Motion to Dismiss (the "Reply").  (Dkt. 61.)  The Court subsequently took the Motion under submission without a hearing.  (See Dkt. 57.)  On July 9, 2025, Plaintiff filed a Notice of Dismissal which voluntarily dismissed Nurse Johnston and Dr. Gulani from the action pursuant to Federal Rule of Civil Procedure 41(a).  (Dkt. 63.)

For the reasons stated below, the Court recommends that Defendants' Motion

to Dismiss be GRANTED, that Plaintiff's claims for declaratory relief be DISMISSED WITHOUT LEAVE TO AMEND, and that Plaintiff's Eighth Amendment deliberate indifference claim against Defendant Pena be DISMISSED WITH LEAVE TO AMEND.  Further, the Court recommends that Defendant Fields be DISMISSED WITHOUT PREJUDICE pursuant to Federal Rule of Civil Procedure 4(m).

## II.

## PLAINTIFF'S ALLEGATIONS

Plaintiff alleges the following factual background in support of his claims:

Defendants Pena, Johnston, Fields, and Gulani, were medical professionals employed at FCI Victorville while Plaintiff was incarcerated there.  (Dkt. 31 at 1-2.) Plaintiff began suffering from moderate pain in his right arm which he believed to be related to a bug bite.  (Id. at 2.)  The pain was accompanied by swelling.  (Id.) Plaintiff's symptoms did not subside and when he woke up the following morning, he found himself in severe pain with his arm red and noticeably bigger.  (Id.) Plaintiff complained to Defendant Pena that day.  (Id.)  Defendant Pena told Plaintiff that it was "Staph" and that he should fill out a sick-call slip to see the doctor on the following Wednesday, five or six days later.  (Id.)  Plaintiff again complained to a different nurse that his arm needed medical attention and was ignored.  (Id.)

Over the next few days, Plaintiff complained to medical personnel, but they all told him that he could not see a doctor for another few days due to a policy statement in effect for inmates housed in the Special Housing Unit ("SHU") at FCI Victorville.  (Id. at 3.)  The following week, Plaintiff's arm was "burning hot and red," and was causing him "near constant agony."  (Id.)  Plaintiff's arm had swollen to the size of a football and he could not feel or move his fingers.  (Id.)  Plaintiff complained to a nurse that day and was told that she could not help him.  (Id.)  A

doctor was notified, but refused to see Plaintiff.  (Id.)

Six days after the incident began, Plaintiff was seen by a doctor who had initially ignored the issue.  (Id.)  Dr. Gulani saw Plaintiff on February 24, 2022 and diagnosed him with either cellulitis or necrotizing fasciitis.  (Id.)  Dr. Gulani entered a request for an immediate transfer of Plaintiff to a hospital.  (Id.)  Plaintiff's condition was so severe that a correctional officer had to help Plaintiff stand.  (Id. at 4.)  Plaintiff was so weak and disoriented that he could not stand on his own.  (Id.)  Plaintiff was transported in a wheelchair.  (Id.)

At the hospital, Plaintiff was determined to be suffering from necrotizing fasciitis that resulted in a destruction of muscle and connective tissue.  (Id.)  Plaintiff underwent several surgeries and was admitted to the hospital for five days.  (Id.)  At one point, the surgical team thought the disease was serious enough that they considered "right arm and forearm amputation" or placing Plaintiff into a coma to save his life.  (Id.)  Nearly the entire time Plaintiff was in the hospital, Plaintiff was intubated and sedated.  (Id.)  Instead of amputation, Plaintiff was removed from sedation and received "large tissue debridement and skin grafting of about 20% of the arm."  (Id.)  Plaintiff was left with "permanent neuro/motor deficits due to tissue destruction from the infection."  (Id.)  At the time of the filing of the instant action, Plaintiff lacked "strength of finger flexion" could not make a fist.  (Id. at 4-5.)  Plaintiff now finds it difficult to execute basic tasks such as bathing, writing, or eating.  (Id. at 5.)

Plaintiff also experiences fear of close confinement and is afraid of getting sick again.  (Id.)  Plaintiff sometimes experiences panic attacks when remembering the experience.  (Id.)

## III.

## DEFENDANTS' MOTION TO DISMISS

Defendants argue that Plaintiff's claims for declaratory relief should be

dismissed because such relief is unavailable under either the FTCA or Bivens.  (Dkt. 56 at 8-9.)  Defendants further argue that Plaintiff has failed to state an Eighth Amendment deliberate indifference claim against Defendant Pena.  (Dkt. 56 at 9-10.)  Specifically, Defendants contend that a mere delay in medical care without more is insufficient to constitute an Eighth Amendment violation.  (Id.)  Defendants contend that Plaintiff has failed to allege that Defendant Pena acted intentionally, with a subjectively culpable state of mind, in ignoring Plaintiff's symptoms.  (Id.)  Defendants base this contention on the fact that Plaintiff alleges Defendant Pena saw him only on the first day that Plaintiff began experiencing pain and that the SAC lacks any allegation that Defendant Pena saw Plaintiff again.  (Id. at 10.)

**IV.**

**STANDARDS GOVERNING MOTIONS TO DISMISS**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.; Hartmann v. Cal. Dep't of Corr. & Rehab., 707 F.3d 1114, 1122 (9th Cir. 2013).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Mashiri v. Epsten Grinnell & Howell, 845 F.3d 984, 988 (9th Cir. 2017) (internal quotation marks omitted).  The Court ordinarily must construe a *pro se* litigant's pleading liberally and hold a *pro se* plaintiff "to less stringent standards than formal pleadings drafted by lawyers."  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted).

The Court must accept as true all non-conclusory factual allegations

5

contained in the complaint[1] and must construe the complaint in the light most favorable to the plaintiff.  See Steinle v. Cty. & Cnty. of San Francisco, 919 F.3d 1154, 1160 (9th Cir. 2019).  "Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure."  Khoja v. Orexigen Therapeutics, Inc., 899 F3d 988, 998 (9th Cir. 2018).  The Court may consider "only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."  Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012) (internal quotation marks omitted); Schneider v. Cal. Dep't of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1988) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.").

# V.
## DISCUSSION

A.    **Plaintiff's Claims For Declaratory Relief Under The FTCA And *Bivens* Should Be Dismissed Without Leave To Amend.**

"In Bivens, the Supreme Court provided a judicially-created cause of action for damages arising out of constitutional violations by federal officers."  Solida v. McKelvey, 820 F.3d 1090, 1094 (9th Cir. 2016).  Accordingly, "money damages is the remedy under Bivens."  Id.  Further, "the only relief provided for in the FTCA is

---

[1]  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678; Yagman v. Garcetti, 852 F.3d 859, 863 (9th Cir. 2017).  Likewise, the Court "need not accept as true allegations contradicting documents that are referenced in the complaint or that are properly subject to judicial notice."  Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 588 (9th Cir. 2006); Seven Arts Filmed Entm't Ltd. v. Content Media Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013).

money damages." Westbay Steel, Inc. v. United States, 970 F.2d 648, 651 (9th Cir. 1992) (internal quotations and brackets omitted); Quechan Indian Tribe v. United States, 535 F. Supp. 2d 1072, 1116 (S.D. Cal. 2008) ("The United States waives immunity in FTCA cases for claims against the United States seeking monetary damages."); McAuliffe v. U.S. Dep't of Veterans Affs., 2007 WL 2123690, at *5 (N.D. Cal. July 23, 2007) ("The FTCA only waives sovereign immunity as to claims for 'money damages' and not for declaratory or injunctive relief." (quoting 28 U.S.C. 1346(b)(1))); Wallace v. United States, 2019 WL 3326027, at *3 (C.D. Cal. May 6, 2019) ("[D]eclaratory relief is improper under the FTCA because the only relief available in a FTCA claim is money damages." (internal quotations omitted)), report and recommendation adopted, 2019 WL 3457124 (C.D. Cal. July 30, 2019), aff'd, 821 F. App'x 854 (9th Cir. 2020).

Here, Defendants argue that Plaintiff's claims for declaratory relief must be dismissed because "Plaintiff identifies no sovereign immunity waiver applicable to his claim for declaratory relief against the United States or Defendant Pena." (Dkt. 56 at 9.) While Plaintiff concedes that declaratory relief is unavailable under the FTCA, he argues that declaratory relief is available for his Bivens claim, citing the Declaratory Judgment Act, 28 U.S.C. § 2201. (Dkt. 60 at 4.) However, "the Declaratory Judgment Act (28 U.S.C. §§ 2201) is not itself a waiver of sovereign immunity." Lee v. United States Dep't of the Navy, 716 F. Supp. 3d 911, 915 (S.D. Cal. 2024); see Brownell v. Ketcham Wire & Mfg. Co., 211 F.2d 121, 128 (9th Cir. 1954) ("[T]he Declaratory Judgment Act . . . IS NOT A CONSENT OF THE UNITED STATES to be sued, and merely grants an additional remedy in cases where jurisdiction already exists in the court."). As the Ninth Circuit explained in Solida, "[t]he only remedy available in a Bivens action is an award for monetary damages from defendants in their individual capacities." Solida, 820 F.3d at 1093 (internal quotation marks omitted). Accordingly, Plaintiff's claims for declaratory relief under both the FTCA and Bivens should be dismissed without leave to amend.

**B.      Plaintiff's Eighth Amendment Deliberate Indifference Claim Against Defendant Pena Should Be Dismissed With Leave To Amend.**

Defendants argue that Plaintiff's Eighth Amendment deliberate indifference claim should be dismissed because Plaintiff's allegations "fail to demonstrate that she acted intentionally, with a subjectively culpable state of mind, in ignoring Plaintiff's alleged symptoms." (Dkt. 56 at 10.)  Defendants contend that the lack of any allegation in the SAC that Defendant Pena saw Plaintiff after his first day of symptoms, renders his Eighth Amendment deliberate indifference claims non-actionable. (Id.)  In response, Plaintiff alleges that Defendant Pena did bring him medication after he first complained to her regarding the pain and swelling in his arm.[2]  (Dkt. 60 at 6.)  Plaintiff further contends that Defendant Pena might be one of the nurses that failed to help Plaintiff after the first encounter, but that he simply does not know the identities of all of those nurses at this stage of the proceedings. (Id.)

**1.      Legal Standard.**

Under the Eighth Amendment, prisoners have a constitutional right to medical care. See Estelle v. Gamble, 429 U.S. 97, 103 (1976).  The government's failure to satisfy its "obligation to provide medical care for those whom it is punishing by incarceration" can constitute an Eighth Amendment violation cognizable under Bivens.  Colwell v. Bannister, 763 F.3d 1060, 1066 (9th Cir. 2014) (internal quotation marks omitted).  To prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must show "deliberate indifference" to his "serious medical needs" by a specific defendant.  Id.  This includes "both an

---

[2] Because this is a new factual allegation not contained in the SAC, the Court ignores it for the purposes of ruling on Defendants' Motion to Dismiss.  See Schneider, 151 F.3d at 1197 n.1.  However, the Court may consider this new factual allegation "in determining whether to grant leave to amend or to dismiss the complaint with or without prejudice."  Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).

objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012); Farmer v. Brennan, 511 U.S. 825, 834 (1994).

Under the objective component, "[a] medical need is serious if failure to treat it will result in significant injury or the unnecessary and wanton infliction of pain." Peralta v. Dillard, 744 F.3d 1076, 1081 (9th Cir. 2014). "Indications that a plaintiff has a serious medical need include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" Colwell, 763 F.3d at 1066.

Under the subjective component of the test, deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Colwell, 763 F.3d at 1066 (internal quotation marks omitted). A prison official is deliberately indifferent if he or she "knows of and disregards an excessive risk to inmate health and safety." Peralta, 744 F.3d at 1082 (internal quotation marks omitted). This means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 835. However, mere negligence — even gross negligence — is not enough to meet the deliberate indifference standard. Id. at 835; Lemire v. Cal. Dep't of Corr. & Rehab., 726 F.3d 1062, 1082 (9th Cir. 2013). A plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances, and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 331 (9th Cir. 1996).

## 2. Analysis.

Here, Plaintiff alleges that he communicated his severe pain and red arm to Defendant Pena and Defendant Pena told Plaintiff it was "Staph."[3]  (Dkt. 31 at 2.) Further, Defendant Pena allegedly instructed Plaintiff to fill out a sick-call slip which would result in a doctor visit five-to-six days later.[4]  (Id.)  These two allegations amount to the entire universe of alleged facts regarding Defendant Pena's conduct in the SAC.  (Id.)  Plaintiff makes many allegations about other "Nurses," and about pain and suffering which occurred after this initial interaction with Defendant Pena.  (Id. at 2-5.)  Plaintiff also makes allegations about the conduct of other individuals, however none of those individuals have been served. Accordingly, the question before the Court is whether Plaintiff's allegations regarding Defendant Pena's assessment of an infection caused by Staphylococcus bacteria, and subsequent recommendation that Plaintiff fill out a sick-call for an appointment five-to-six days later, sufficiently states an Eighth Amendment deliberate indifference claim.

The Court concludes that Plaintiff has failed to allege facts from which the Court could plausibly infer that Defendant Pena subjectively knew of a substantial risk of harm to Plaintiff and then failed to take reasonable measures to address this risk.  See Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (explaining that to establish a claim for deliberate indifference, "the prison official must not only be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, but that person must also draw the inference" (internal quotation marks omitted)).  Indeed, Plaintiff alleges that he complained to Defendant Pena on the first day that he complained of arm pain.  (Dkt. 31 at 2.)

---

[3] Both Defendants and the Court understand "Staph" to refer to a bacterial infection caused by Staphylococcus bacteria.  (Dkt. 65 at 5 n.4.)

[4] Plaintiff notes that he first complained to Nurse Pena on a Thursday or Friday. (Dkt. 32 at 2.)  Therefore, the five-to-six day wait includes the weekend.  (Id.)

10

However, there is no allegation in the SAC that Defendant Pena ever saw Plaintiff again or had any awareness that the condition of Plaintiff's arm grew worse over the next few days.  (Id. at 2-3.)  Thus, there is no basis to conclude that Defendant Pena's instruction to Plaintiff to fill out a sick-call slip which would result in Plaintiff being scheduled to see a doctor five-to-six days later (accounting for the weekend) was unreasonable.  See Toguchi, 391 F.3d at 1060 ("A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment.").

As set forth above, Plaintiff now alleges for the first time that Defendant Pena did bring Plaintiff medication after he first complained to her regarding the pain and swelling in his arm.  (Dkt. 60 at 6.)  Plaintiff further contends that Defendant Pena might be one of the nurses that failed to help Plaintiff after the first encounter, but that he simply does not know the identities of all of those nurses at this stage of the proceedings.  (Id.)  The Court cannot consider these facts to find that Plaintiff has sufficiently stated a claim in the SAC, but the Court can consider them in determining whether to grant Plaintiff leave to amend.  See Broam, 320 F.3d at 1026 n.2.  Accordingly, the Court recommends that Plaintiff be granted leave to amend to attempt to cure the deficiencies set forth above.  If Plaintiff chooses to file an amended complaint alleging an Eighth Amendment deliberate indifference claim against Defendant Pena, he must allege facts establishing that Defendant Pena subjectively knew of a substantial risk of harm to Plaintiff and then failed to take reasonable measures to address this risk.

**C.     The Court Should Defer Ruling On The Issue Of Qualified Immunity.**

Defendants also assert, in the alternative, that they are entitled to qualified immunity because even if there was a violation of Plaintiff's Eighth Amendment rights, the right at issue was not clearly established at the time of the alleged wrongdoing.  (Dkt. 56 at 11-12.)  Specifically, Defendants contend that "Plaintiff has not identified any clearly established law that Defendant Pena has violated in

11

refusing him emergency medical care on day one of his arm pain." (Id. at 12.)  For the reasons set forth below, the Court finds it premature to rule on qualified immunity at this stage of the proceedings.

### 1. Standards Governing The Defense Of Qualified Immunity.

The defense of qualified immunity protects government officials from liability for civil damages as long as their conduct does not violate clearly established constitutional or statutory rights of which a reasonable official would have known.  See Pearson v. Callahan, 555 U.S. 223, 231 (2009); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Kisela v. Hughes, 584 U.S. 100, 104 (2018) (per curiam) (same).  "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."  Pearson, 555 U.S. at 231 (internal quotation marks omitted).  On a motion to dismiss, the Court must determine (1) whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the defendant's conduct violated a constitutional or statutory right, and (2) whether that right was clearly established at the time of the violations.  See Cmty. House, Inc. v. City of Boise, 623 F.3d 945, 967 (9th Cir. 2010) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001), modified by Pearson).  The Supreme Court has repeatedly emphasized that "the clearly established right must be defined with specificity."  Cty. of Escondido, Cal. v. Emmons, 586 U.S. 38, 42 (2019) (per curiam).  "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right."  Taylor v. Barkes, 575 U.S. 822, 825 (2015); see also White v. Pauly, 580 U.S. 73, 79 (2017).

### 2. Analysis.

The Ninth Circuit has warned that addressing qualified immunity on a motion to dismiss "is not a wise choice in every case."  Wong v. United States, 373 F.3d 952, 957 (9th Cir. 2004), abrogation on other grounds recognized by Pettibone, 59

12

F.4th at 452.  As explained by the Ninth Circuit, "[t]he confluence of two well-intentioned doctrines, notice pleading and qualified immunity, give rise to this exercise in legal decision making based on facts both hypothetical and vague." Id. at 956.  Because the Court has granted Plaintiff leave to amend his Eighth Amendment deliberate indifference claim, the Court recommends that ruling on the issue of qualified immunity, an issue often better resolved on summary judgment, be deferred until a later stage of the proceedings.  See Wong, 373 F.3d at 957; Morley v. Walker, 175 F.3d 756, 761 (9th Cir. 1999) ("We are not equipped at this stage to determine whether qualified immunity will ultimately protect [the defendant]. Those issues must be resolved at summary judgment or at trial.").

**D.      Defendant Fields Should Be Dismissed Without Prejudice Pursuant To Rule 4(m).**

Federal Rule of Civil Procedure 4(m) provides in relevant part that if a "defendant is not served within 90 days after the complaint is filed, the court -- on motion or on its own after notice to the plaintiff -- must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m).   However, the Rule also provides that if the plaintiff shows good cause for the failure, "the court must extend the time for service for an appropriate period." Id.  When service cannot be accomplished due to a *pro se* plaintiff's failure to submit the required information, and the plaintiff fails to remedy the situation after being put on notice, dismissal without prejudice is appropriate.  See Walker v. Sumner, 14 F.3d 1415, 1422 (9th Cir. 1994), overruled on other grounds by Sandin v. Conner, 515 U.S. 472, 483-84 (1995).

This action was filed on February 14, 2024.  (Dkt. 1.)  On November 1, 2024, the Court issued a Summons and Order Directing Service of Plaintiff's SAC by the U.S. Marshals Service.  (Dkts. 39-40.)  On January 10, 2025, the U.S. Marshals Service filed a process receipt and return showing completed service of the SAC on Nurse Ashley Pena.  (See Dkt. 43.)  On January 28, 2025 the U.S. Marshals Service

13

filed a process receipt and return showing completed service of the SAC on the United States of America.  (Dkt. 51.)  However, on the same date, the U.S. Marshal's Service filed process receipts and returns stating that they had not able to complete service of the SAC on Nurse Johnston, Nurse Fields, or Doctor Gulani because they no longer work for the Federal Bureau of Prisons ("BOP").  (Dkts. 48-50.)

On May 16, 2025, counsel for Defendants filed a response which stated that counsel had "made inquiries to determine whether a Waiver of Service of Summons form [could] be obtained with respect to any of the unserved named defendants in this action."  (Dkt. 59 at 2.)  Further, counsel for Defendants provided the Declaration of Oscar Trinidad, Attorney Advisor at the Federal Detention Center in SeaTac, Washington.  (Dkt. 59-1.)  Mr. Trinidad declared the following regarding the Unserved Defendants:

1. "Nurse Johnston" or Brenda Johnston passed away on August 10, 2024.
2. "Dr. Gulani" or Dr. Saroj Gulani was a contractor at the time of the allegations in the subject Complaint.  Dr. Gulani is no longer a contractor for the BOP.
3. "Nurse Fields" or Christine Fields retired on December 30, 2023. To date, I have been unable to determine if she will execute a waiver of service.

(Id.)

Accordingly, on May 19, 2025, the Court authorized limited discovery so that Plaintiff could obtain last known addresses of the Unserved Defendants or the identity of their personal representatives.  (Dkt. 61.)  Specifically, the Court directed Plaintiff to "promptly pursue discovery, such as by serving one or more subpoenas duces tecum directed to the Federal Bureau of Prisons at Oscar Trinidad, Attorney Advisor, FDC SeaTac, P.O. BOX 13901 SEATTLE, WA 98198 to obtain unserved named defendants' last known addresses or the identity of their personal representatives."  (Id. at 2.)  The Court directed the Clerk to provide Plaintiff with

14

one or more Subpoenas Duces Tecum directed to the Federal Bureau of Prisons for each of the named unserved defendants. (Id. at 3.)  Finally, the Court advised Plaintiff that he bore "the burden to provide the information necessary for service of the SAC and that failure to timely effectuate service on any unserved defendant [could] result in that defendant's dismissal from the action." (Id.)

More than 70 days have passed since the Court's authorization of limited discovery so that Plaintiff could obtain the Unserved Defendants' last known addresses or the identity of their personal representatives.  However, Plaintiff has failed to provide the Unserved Defendants' last known addresses or the identity of their personal representatives.  Nor does the docket reflect that Plaintiff has undertaken any steps to effectuate discovery to obtain this information.  Instead, Plaintiff recently filed a Notice of Dismissal which voluntarily dismissed Nurse Johnston and Dr. Gulani from the action pursuant to Federal Rule of Civil Procedure 41(a).  (Dkt. 63.)  Thus, Nurse Fields is the only named defendant who remains unserved.  Nothing in the record reflects that Nurse Fields has been served or that good cause exists to extend the Rule 4(m) deadline.  Accordingly, the Court recommends that Nurse Fields be DISMISSED from the action WITHOUT PREJUDICE pursuant to Federal Rule of Civil Procedure 4(m).  If Plaintiff believes he has good cause for the failure to serve Nurse Fields, he will have the opportunity to object to this Report and Recommendation on that basis.

## VI.

## RECCOMENDATION

IT IS RECOMMENDED that the District Court issue an Order:  (1) accepting and adopting this Report and Recommendation; (2) GRANTING Defendant's Motion to Dismiss; (3) DISMISSING WITHOUT LEAVE TO AMEND Plaintiff's claims for declaratory relief; (4) DISMISSING WITH LEAVE TO AMEND Plaintiff's Eighth Amendment deliberate indifference claim against Defendant Pena;

and (5) directing that Judgment be entered DISMISSING Nurse Fields from this action WITHOUT PREJUDICE pursuant to Federal Rule of Civil Procedure 4(m).

IT IS FURTHER RECOMMENDED that the District Court determine pursuant to Federal Rule of Civil Procedure 54(b) that there is no just reason for delay of entry of final judgment as to Defendant Nurse Fields.

DATED:   July 29, 2025

_____
HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in the Local Rules Governing the Duties of Magistrate Judges and review by the District Judge whose initials appear in the docket number. **Under Local Rule 72-3.4, any objection to this Report and Recommendation must be filed within twenty (20) days**. No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the judgment of the District Court.