**FILED**
CLERK, U.S. DISTRICT COURT

5/01/2026

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ASI_____ DEPUTY

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

THOMAS EDAWARD CLUTTS, JR.                )

  Plaintiff,                              )   Case No: <u>2:24-cv-01291-SPG-AJR</u>:

  v.                                      )   <u>THIRD AMENDED COMPLAINT FOR DAMAGES</u>:

UNITED STATES OF AMERICA,                 )
ASHLEY PENA,                              )   (1) Eighth Amendment Deliberate
                                          )       Indifference to Serious Medical
  Defendants,                            )       Needs (Bivens), against Defend-
                                          )       and Pena;
                                          )
                                          )   (2) Negligence and Medical Malprac-
                                          )       tice under the Federal Tort
                                          )       Claims Act, against the United
                                          )       States:

DEMAND FOR A JURY TRIAL:

## INTRODUCTION:

1. This is a civil action by Thomas Edward Clutts, Jr., (Plaintiff), a federal prisoner, arising out of the failure of medical staff at the Federal Correctional Institution in Victorville, California ("FCI Victorville") to provide adequate medical care for a rapidly worsening flesh-eating bacterial infection (necrotizing fasciitis) in his right arm during a five-day period in February 2022. As a result of that failure, Plaintiff was placed in a medically induced coma, underwent multiple surgeries, narrowly avoided amputation of his right arm, and now suffers permanent neurological and motor deficits.

2. Plaintiff brings two claims: (a) an Eighth Amendment claim for deliberate indifference to serious medical needs, pursuant to <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), and <u>Carlson v. Green</u>,

(-1-)

466 U.S. 14 (1980), against Defendant Ashley Pena, a Bureau of Prisons nurse; and (b) a claim of negligence and medical malpractice under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2671-2680, against the United States of America.

## II. JURISDICTION AND VENUE:

3. This Court has subject-matter jurisdiction over Plaintiff's **Bivens** claim under 28 U.S.C. §§ 1331 and 1343, because the claim arises under the Eighth Amendment to the United States Constitution.

4. This Court has subject-matter jurisdiction over Plaintiff's FTCA claim against the United States under 28 U.S.C. § 1346(b)(1), which vests exclusive jurisdiction in the federal courts over civil tort claims against the United States for personal injury caused by the negligent or wrongful acts or omissions of federal employees acting within the scope of their employment.

5. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 1402(b) because all of the acts and omissions giving rise to Plaintiff's claims occurred at FCI Victorville, located in Adelanto, San Bernardino County, California, which lies within the Central District of California.

## III. PARTIES:

6. Plaintiff Thomas Edward Clutts, Jr., is a citizen of the United States and at all times relevant to this action was a federal prisoner in the custody of the Federal Bureau of Prisons ("BOP"). At the time of the events alleged below, Plaintiff was housed at FCI Victorville. He is currently confined at the Federal Correctional Institution in Butner, North Carolina.

7. Defendant Ashley Pena ("Defendant Pena" or "Nurse Pena") was, at all times relevant to this complaint, a registered nurse and/or nurse practitioner employed by the BOP at FCI Victorville. She is sued in her individual capacity for acts and omissions taken under color of federal law.

8. Defendant United States of America ("the United States") is the proper defendant for Plaintiff's FTCA claim. See 28 U.S.C. §§ 1346(b)(1), 2674, 2679(a); FDIC v. Meyer, 510 U.S. 471, 476 (1994). At all times relevant to this action, the BOP medical and nursing personnel whose conduct gives rise to the FTCA claim were employees of the United States acting within the scope of their employment.

## IV. CONDITIONS PRECEDENT TO FTCA CLAIM:

9. On or about August 1, 2022, Plaintiff timely presented an administrative tort claim to the BOP's Western Regional Office on Standard Form 95, describing the same injuries and conduct alleged in this Complaint and demanding a sum certain. The claim was assigned Tort Claim No. TRT-WXR-2022006157.

10. More than six months have elapsed since Plaintiff presented the claim, and the BOP has not made a final disposition of the claim in writing. Pursuant to 28 U.S.C. § 2675(a), Plaintiff is therefore entitled to treat the BOP's failure to make a final disposition as a final denial of the claim and to bring action against the United States.

## V. FACTUAL ALLEGATIONS:

A. Onset of Symptoms and First Encounter with Nurse Pena; (February 18-19, 2022).

11. In February 2022, Plaintiff was housed in the Special Housing Unit ("SHU") at FCI Victorville. Inmates housed in the SHU could not present at sick call on their own; they were dependent on BOP medical staff who came into the SHU to

deliver medication and respond to sick-call requests.

12. On or about February 18, 2022, Plaintiff began to experience moderate pain in his right arm, presumably as the result of an insect bite. The pain was accompanied by visible swelling.

13. When Plaintiff awoke the following morning, on or about February 19, 2022, his right arm was visibly more swollen, was bright red, and was significantly more painful than it had been the day before.

14. Plaintiff submitted a written sick-call slip and verbally requested medical attention from the nursing staff who entered the SHU. Defendant Pena was the BOP nurse who first responded to Plaintiff that day. Plaintiff displayed his right arm to defendant Pena, who personally observed that it was visibly swollen, red, and painful.

15. Defendant Pena personally examined Plaintiff's arm and told Plaintiff that she believed the condition was a Staphylococcus ("staph") infection. Defendant Pena did not arrange for Plaintiff to be evaluated by a physician on an emergency basis, did not arrange for transfer to a hospital, did not initiate antibiotic therapy, and did not undertake any further assessment beyond a visual inspection. Instead, Defendant Pena instructed Plaintiff to fill out a sick-call slip and informed him that he could not be seen by a physician until the next scheduled "doctor's line", which would not occur until the following Wednesday five to six days later, including the weekend.

B. Defendant Pena's Continued Encounters With Plaintiff and Observation of Worsening Condition (February 20-23, 2022).

16. Contrary to the impression created by Plaintiff's prior pleadings. Defendant Pena's involvement did not end after the first encounter. Defendant Pena was one of the BOP nurses on duty in the SHU on multiple days during the period from February 19, 2022 through February 23, 2022. During that period, Defendant Pena personally returned to Plaintiff's cell on multiple occasions to deliver medication.

17. Each time Defendant Pena returned to Plaintiff's cell during this period. Plaintiff verbally complained to her about his arm and asked her to allow him to see the physician. On each such occasion, Defendant Pena could plainly see Plaintiff's right arm and could observe that the swelling, redness, and pain were progressively worsening.

18. By the second day of swelling, Plaintiff could no longer feel his fingers. Plaintiff specifically informed Defendant Pena and the other nursing staff who delivered his medication that he had lost sensation in his fingers. Defendant Pena's response was to repeat that Plaintiff would not be permitted to see a physician until the next scheduled "doctor's line" on Wednesday, February 23, 2022.

19. In addition to her own personal observations, Defendant Pena expressly told Plaintiff during this period of time that the physician on duty already knew about Plaintiff's arm but would not see Plaintiff before the next scheduled "doctor's line." Defendant Pena therefore knew, at a minimum, that (a) Plaintiff was suffering from a progressively worsening infection in his right arm; (b) the worsening symptoms included loss of sensation in the fingers; (c) Plaintiff was being denied physician evaluation despite those symptoms; and (d) the physician's refusal to act was being communicated to and relied upon by Defendant Pena to justify her own continued failure to escalate Plaintiff's care.

20. At all times during this period, the deterioration of Plaintiff's arm was visually obvious to anyone who observed it. The arm progrssively swelled until it was approximately the size of a football, became hot to the touch and bright red, and Plaintiff lost the ability to feel or move his fingers. Defendant Pena personally observed this deterioration each time she returned to Plaintiff's cell.

21. Notwithstanding her direct, personal observation of these worsening symptoms and Plaintiff's repeated, explicit pleas for medical attention, Defendant Pena did not (a) arrange for Plaintiff to be examined by a physician on an emergency basis; (b) attempt to contact the on-call physician to escalate the case; (c) arrange for Plaintiff's transfer to an outside emergency room or hospital; (d) initiate or request initiation of antibiotic therapy; (e) take or document vital signs sufficent to assess for systemic infection; or (f) take any other reasonable step to address the obvious and worsening medical emergency unfolding in front of her.

22. Defendant Pena's conduct was not based on any reasoned medical judgment about the proper course of treatment. Rather, it was based on the institutional convenience of waiting for the next scheduled "doctor's line," and on the rote application of a SHU policy that delayed access to physician evaluation. Defendant Pena chose institutional convenience over the obvious medical needs of an inmate she had personally and repeatedly observed deteriorating in front of her.

C. Emergency Hospitalization and Diagnosis (February 23-24, 2022).

23. On or about February 23, 2022, Plaintiff was finally permitted to be seen by a physician at FCI Victorville. By that time, Plaintiff was so weak and disoriented

(-6-)

that a correctional officer had to physically help him to stand, and Plaintiff was transported in a wheelchair. The examining physician immediately recognized the severity of Plaintiff's condition and ordered an emergency transfer to an outside hospital.

24. Plaintiff was transported to a hospital in Riverside, California. Plaintiff has limited memory of the events between his removal from FCI Victorville and his arrival at the hospital due to the severity of his condition. The medical records reflect that Plaintiff was placed in a medically induced coma shortly after his arrival at the hospital.

25. At the hospital, Plaintiff was diagnosed with necrotizing fasciitis (commonly known as "flesh-eating disease") and sepsis, along with related conditions arising from the untreated infection. The infection had progressed to the point that the surgical team considered amputating Plaintiff's right arm and forearm, and considered placing him in amedically induced coma, as the only viable means to save his life.

26. Plaintiff underwent multiple surgeries during his hospitalization. Plaintiff was intubated and sedated for nearly the entire duration of his hospitalization, and his prognosis was repeatedly described in his medical records as "guarded."

27. Plaintiff ultimately avoided amputation, but only by undergoing extensive tissue debridement and skin grafting of approximately 20% of his right arm. Plaintiff was left with permanent neurological and motor deficits resulting from tissue destruction casued by the infection.

D. Permanent Injuries:

28. Plaintiff's right arm is his dominent arm. As a direct and proximate result of the conduct described above, Plaintiff has lost the strength necessary to flex his fingers and make a fist. Plaintiff has substantial difficulty performing basic activities of daily living, including bathing, writing, and eating.

29. Plaintiff also suffers ongoing psychological injury, including a fear of close confinement, panic attacks triggered by the appearance of his disfigured arm, and persistent fear that the failure of BOP medical staff to take his complaints seriously could recur in the future.

E. The Risk of Untreated Necrotizing Fasciitis Was Both Obvious and Well Known:

30. The clinical signs that Plaintiff exhibited and that Defendant Pena personally observed during the period from February 19 through February 23, 2022 including a rapidly enlarging red, swollen, and intensely painful extremity, accompanied by loss of sensation in the fingers in an inmate complaining of severe and worsening symptoms are well-recognized warning signs of a serious soft-tissue infection requiring urgent physician evaluation. As a trained nurse, Defendant Pena knew or, at the absolute minimum, was aware of facts from which the inference could be drawn that those symptoms posed a substantial risk of serious harm to Plaintiff, and she in fact drew that inference.

31. Defendant Pena's own statement to Plaintiff that she believed the condition was a staph infection, combined with her acknowledgment that the physician on duty already knew about Plaintiff's condition and was nonetheless refusing to see him before the next "doctor's line," demonstrates that Defendant Pena subjectively understood that Plaintiff was suffering from a bacterial infection of his arm and that physician evaluation had been actively withheld notwithstanding the worsening symptoms she personally observed.

(-8-)

**F. Acts and Omissions of Other BOP Employees Acting Within the Scope of Their
Employment:**

32. Defendant Pena was not the only BOP employee whose acts and omissions caused or contributed to Plaintiff's injuries. The allegations in this Section F, are pleaded in support of the Federal Tort Claims Act against the United States set forth in Count Two below, and not as a basis for any **Bivens** claim against any individual.

33. On the night of February 19, 2022, after Plaintiff's initial encounter with Defendant Pena, Plaintiff complained to a different BOP nurse on duty in the SHU about his arm. That nurse, who was acting within the scope of her federal employment, declined to take any action and told Plaintiff he would have to wait for the next scheduled "doctor's line."

34. Over the days that followed, between February 20 and February 23, 2022, additional BOP nurses entered the SHU to deliver medication to Plaintiff and other inmates. On each occasion, Plaintiff displayed his right arm to the nurse on duty, complained of severe and worsening pain, and asked to be evaluated by a physician. On each occasion, the nurse on duty personally observed the swelling, redness, and progressive deterioration of Plaintiff's arm. Each of these BOP nurses were acting within the scope of her federal employment. None took any action to escalate Plaintiff's care to a physician on an emergency basis, to arrange for transfer to an outside hospital, to initiate or request initiation of antibiotic therapy, or to take or document vital signs sufficient to assess for systemic infection.

35. On information and belief, the BOP physician(s) on duty at FCI Victorville between February 19 and February 23, 2022 were notified of Plaintiff's arm condition

by nursing staff during that period, including by Defendant Pena, and were aware that Plaintiff was complaining of severe and worsening pain, swelling, redness, and the loss of sensation in the fingers. Notwithstanding that notification and awareness, the BOP physician(s) on duty refused to evaluate Plaintiff before the next scheduled "doctor's line" on Wednesday, February 23, 2022, and instead deferred to the SHU scheduling policy. The BOP physician(s) on duty at the relevant times were, on information and belief, employees of the United States acting within the scope of their federal employment.

36. At all relevant times, FCI Victorville maintained a policy or practice (referred to in prior pleadings and herein as the "doctor's line" policy) under which inmates housed in the SHU could not be evaluated by a physician until a regularly scheduled weekly clinic, regardless of the acuity, severity, or progression of the inmate's symptoms in the interim. As applied to Plaintiff, this policy operated to delay physician evaluation of an obvious and rapidly worsening soft-tissue infection by approximately five to six days, including a weekend. The implementation and rote enforcement of this policy by BOP medical, nursing, and supervisory personnal all of whom were employees of the United States acting within the scope of their federal employment was a substantial factor in causing Plaintiff's injuries.

## VI. CLAIMS FOR RELIEF:

COUNT ONE: Eighth Amendment Deliberate Indifference to Serious Medical Needs: (Bivens action against Defendant Pena, in her individual capacity)

37. Plaintiff incorporates by reference paragraphs 1 through 36 as though fully set forth here.

38. At all times relevant to this Court, Defendant Pena was acting under color of federal law as a BOP nurse at FCI Victorville.

39. The Eighth Amendment to the United States Constitution prohibits the infliction of cruel and unusual punishment. The Eighth Amendment's prohibition is violated when prison officials act with deliberate indifference to a prisoner's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976); Farmer v. Brennan, 511 U.S. 825, 837 (1994); Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004).

40. A federal damages remedy for Eighth Amendment deliberate indifference to a federal prisoner's serious medical needs by federal prison medical personnel was recognized by the Supreme Court in Carlson v. Green, 446 U.S. 14 (1980), and remains an established Bivens context. See Ziglar v. Abbasi, 582 U.S. 120, 131 (2017) (recognizing Carlson as one of the three established Bivens contexts).

41. Plaintiff's rapidly worsening, severely painful, swollen, and discolored right arm ultimately diagnosed as necrotizing fasciitis with sepsis, constituted an objectively serious medical need. The condition was one for which a reasonable nurse would conclude that physician evaluation, antibiotic therapy, and likely hospitalization were urgently required.

42. Defendant Pena was subjectively aware of facts from which the inference could be drawn that Plaintiff faced a substantial risk of serious harm, and Defendant Pena in fact drew that inference. As alleged above, Defendant Pena (a) personally examined Plaintiff's arm on the first day and herself diagnosed it as a bacterial infection; (b) personally returned to Plaintiff's cell on multiple subsequent days to deliver medication and personally observed the progressive worsening of Plaintiff's arm; (c) was repeatedly told by Plaintiff that he had lost sensation in

(-11-)

his fingers and was in severe pain; and (d) was aware that the physician on duty had been notified and was nonetheless refusing to see Plaintiff before the next scheduled "doctor's line."

43. Despite that subjective awareness, Defendant Pena consciously failed to take reasonable measures to abate the risk. She did not arrange for emergency physician evaluation, did not contact the on-call physician to escalate the case, did not arrange for transfer to an outside emergency room, did not initiate or request initiation of antibiotic therapy, and did not take or document vital signs sufficient to assess for systemic infection. Instead, she repeatedly relied on the SHU "doctor's line" scheduling policy as a justification for inaction.

44. Defendant Pena's reliance on the SHU policy and on the physician's refusal to see Plaintiff did not absolve her of independent responsibility. A nurse who personally observes a worsening, life-threatening soft-tissue infection in a patient cannot constitutionally discharge her duty by deferring to an institutional scheduling policy or to a physician's refusal to act, particulary where the deference is unreasonable in light of the symptoms personally observed. See, e.g., Snow v. McDaniel, 681 F.3d 978, 985-86 (9th Cir. 2012), overruled in part on other grounds by Peralta v. Dillard, 744 F.3d 1076 (9th Cir. 2014)(en banc); Jett v. Penner, 439 F.3d 1091, 1098 (9th Cir. 2006); Lemire v. Cal. Dep't of Corr. & Rehab., 726 F.3d 1062, 1082-83 (9th Cir. 2013).

45. Defendant Pena's deliberate indifference was the proximate cause of Plaintiff's injuries. Had Defendant Pena escalated Plaintiff's care to a physician on or before February 21, 2022, or arranged for transfer to a hospital at any point during her continued encounters with Plaintiff, the necrotizing fasciitis would have been

(-12-)

diagnosed and treated before the destruction of muscle and connective tissue, before the onset of sepsis, before the need for multiple debridement surgeries and skin grafting, and before Plaintiff sustained permanent neurological and motor deficits.

46. At the time of Defendant Pena's conduct in February 2022, it was clearly established that a prison medical professional violates the Eighth Amendment when, with subjective awareness of a serious and worsening medical condition, she fails to take reasonable measures to provide or arrange necessary care, including by deferring to scheduling policies or to a physician's refusal to act in the face of obvious clinical deterioration. See Estelle v. Gamble, 429 U.S. at 104-05; Carlson, 446 U.S. at 16 n.1; Farmer, 511 U.S. at 837; Jett, 439 F.3d at 1098; Snow, 681 F.3d at 985-86; Lemire, 726 F.3d at 1082-83; Clouthier v. County of Contra Costa, 591 F.3d 1232, 1241-44 (9th Cir. 2010) (subjective deliberate-indifference standard for Eighth Amendment claims by convicted prisoners; partially abrogated only in the pretrial-detainee context by Castro v. County of L.A., 833 F.3d 1060 (9th Cir. 2016) (en banc)).

47. As a direct and proximate result of Defendant Pena's deliberate indifference, Plaintiff has suffered the physical and psychological injuries described above, for which he is entitled to compensatory and punitive damages.

COUNT TWO: Negligence and Medical Malpractice (Federal Tort Claims Act)
(Against Defendant United States of America)

48. Plaintiff incorporates by reference paragraphs 1 through 36 as fully set forth here.

49. This Count is brought against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1) and 2671-2680. Under the FTCA, the United States is

liable for personal injury caused by the negligent or wrongful acts or omissions of its employees acting within the scope of their employment, under circumstances in which a private person would be liable to the claimant in accordance with the law of the place where the act or omission occurred. The relevant law is the law of the State of California. See 28 U.S.C. §§ 1346(b)(1), 2674; United States v. Muniz, 374 U.S. 150 (1963)(federal prisoners may sue the United States under the FTCA for personal injuries caused by the negligence of federal prison employees).

50. At all relevant times, the BOP medical, nursing, and supervisory personnel at FCI Victorville who attended to Plaintiff including, without limitation, Defendant Pena, the other BOP nurses who entered the SHU and observed Plaintiff's arm between February 19 and February 23, 2022, and the BOP physician(s) on duty during that period who were notified of Plaintiff's condition and who refused to evaluate him before the next scheduled "doctor's line" were employees of the United States acting within the course and scope of their federal employment.

51. In addition to any duty owed under the Claifornia professional standard of care, the BOP owes federal prisoners a non-discretionary statutory duty of care fixed by 18 U.S.C. § 4042(a), which provides that the BOP shall "provide suitable quarters and provide for the safekeeping, care, and subsistence" of all federal prisoners, and shall "provide for the protection" of those prisoners. See Muniz, 374 U.S. at 164-65 (§ 4042 fixes the duty of care owed by the BOP to federal prisoners under the FTCA).

52. Under California law, medical providers, including nurses and physicians, owe their patients a duty to exercise the degree of skill, knowledge, and care ordinarily possessed and exercised by reasonably competent practitioners of the same

discipline practicing under similar circumstances.

53. The BOP medical, nursing, and supervisory personnel who attended to Plaintiff (or who declined to attend to him) between February 18 and February 23, 2022 breached the duties of care set forth above in numerous respects, including by:

(a) failing to perform an adequate clinical assessment of an inmate presenting with a rapidly enlarging, red, hot, swollen, and intensely painful extremity;

(b) failing to take or document vital signs sufficient to evaluate the inmate for systemic infection;

(c) failing to recognize and act upon the well-known clinical warning signs of a serious soft-tissue infection, including necrotizing fasciitis;

(d) failing to escalate the inmate's care to a physician on an emergency basis;

(e) failing of the BOP physician(s) on duty, after being notified of Plaintiff's condition by nursing staff, to personally evaluate Plaintiff before the next scheduled "doctor's line";

(f) failing to arrange for prompt transfer to an outside emergency room or hospital;

(g) failing to initiate or request initiation of timely antibiotic therapy;

(h) deferring to, and rotely enforcing, an institutional scheduling policy that delayed physician evaluation of an obviously deteriorating patient by five to six days;

(i) failing to reassess the inmate as his symptoms progressed, including the loss of sensation in his fingers, and to take appropriate action in response to those changes; and

(j) failing to ensure compliance with the BOP's non-discretionary duty under 18 U.S.C. § 4042(a) to provide for the safekeeping and care of Plaintiff while in BOP custody.

54. As a direct and proximate result of these breaches of the duties of care owed to Plaintiff, Plaintiff suffered the injuries described above, including necrotizing fasciitis, sepsis, multiple surgeries, prolonged hospitalization, large-tissue debridement, skin grafting of approximately 20% of his right arm, permanent neurological and motor deficits, ongoing pain, loss of function in his dominant arm, and ongoing psychological injury. These injuries would not have occurred in the absence of the negligent acts and omissions of the United States' employees.

55. Pursuant to 28 U.S.C. § 2674, the United States is liable to Plaintiff in tort to the same extent as a private individual under like circumstances would be liable under California law.

## VII. PRAYER FOR RELIEF:

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants as follows:

A. Awarding Plaintiff compensatory damages against Defendant Pena, in her individual capacity, under Bivens and Carlson v. Green, in an amount to be proven at Trial; for the physical and psychological injuries described above;

B. Awarding Plaintiff punitive damages against Defendant Pena, in her individual capacity, in an amount to be proven at trial sufficient to punish her conduct and to deter similar conduct by other federal correctional medical personnel;

C. Awarding Plaintiff compensatory damages against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1) and 2674, in an amount to be proven at trial, not in excess of the sum certain stated in Tort Claim No. <u>TRT-WXR-2022006157</u>, for the physical and psychological injuries described above;

D. Awarding Plaintiff his costs of suit; and

E. Awarding such other and further relief as the Court deems just and proper.

## VIII. <u>DEMAND FOR JURY TRIAL</u>:

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all claims and issues so triable, including all claims against Defendant Pena, Plaintiff acknowledges that the FTCA claim against the United States is to be tried by the Court without a jury pursuant to 28 U.S.C. § 2402.

Dated: ____April 24,_____ 2026

Respectfully Submitted,

Thomas Edward Clutts, Jr.
Reg. No. 66193-112
FCI Butner Medium II
P.O. Box 1500
Butner, NC  27509
Plaintiff, Pro Se

### <u>VERIFICATION</u>:

I, Thomas Edward Clutts, Jr., declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that I have read the foregoing Third Amended Complaint and **that** the factual allegations set forth in paragraphs 6 through 36 are true and correct based on my personal knowledge, except as to those matters stated on information and belief, and as to those matters, I believe them to be true.

Executed this __24__ day of April, 2026, at Butner, North Carolina,

Thomas Edward Clutts, Jr.

(-17-)

## CERTIFICATE OF SERVICE:

I, Thomas Edward Clutts, Jr., hereby certify that I have served a true and correct copy of said Third Amended Complaint, in this case.

This action is deemed filed at the time it was delivered to prison authorities for forwarding, See **Houston v. Lack**, 101 L.Ed.2d 245 (1988), upon the defendant(s) of record. Defendant Pena's address not known to Plaintiff.

I have mailed a copy of this to:

The Clerk of Court
Central District of California
312 North Spring Street
Los Angeles, Cal.  90012  > > > via Certified **Mail:** 7022 0410 0003 3926 5815

The United States Attorney's Office
312 North Spring Street
Suite 1200
Los Angeles, Cal. 90012

This Legal action was deposited in the United States Mail at the Federal Correctional Complex, FCI Butner Medium Two, which is located at Post Office Box 1500, in Butner, North Carolina, 27509.

I declare under the penalty of perjury, that the foregoing is true and correct pursuant to 28 U.S.C. § 1746

Sworn and attested to by:  _____

No. 66193-112
FCI Butner Medium II
P.O. Box 1500
Butner, N.C.  27509

(-18-)

Clerk of Court
Central District of California
312 North Spring Street
Los Angeles, California  90012

April 23, 2026

Re: Cutts v. USA, and Ashley Pena:
Case No: 2:24-cv-01291-SPG-AJR:

Dear Clerk of Court,

Please find enclosed my Third Amended Complaint, and Demand for a Jury Trial. This was mailed on Friday, April 24th, 2026, from the FCI Butner's (Medium II) mailroom. I have also sent a copy to the United States Attorney's Office. I do available to me, Ashley Pena's address, for me to send to her personally. I trust that you will make a copy available to her or her attorney.

Respectfully Submitted,

Thomas Edward Clutts
# 66193-112
FCI Butner Medium II
P.O. Box 1500
Butner, N.C.  27509

Case 2:24-cv-01291-SPG-AJR   Document 82   Filed 05/01/26   Page 20 of 21   Page ID #:468

Thomas Edward Clutts, Jr.
# 66193-112
Federal Correctional Institution
FCI Butner Medium II
Post Office Box 1500
Butner, North Carolina    27509

CERTIFIED MAIL®

7022 0410 0003 3926 5815

U.S. POSTAGE PAID
FCM LG ENV
BUTNER, NC 27509
APR 27, 2026
$0.00
S2322P501727-91

Retail

UNITED STATES
POSTAL SERVICE®

90012

RDC 99

Clerk of Court
Central District of Caliifornia
312 North Spring Street
Los Angeles, California

90012

AJR

LEGAL MAIL:

RECEIVED
CLERK, U.S. DISTRICT COURT

MAY - 1 2026

CENTRAL DISTRICT OF CALIFORNIA
BY                            DEPUTY

FEDERAL CORRECTIONAL INST. #2
P.O. BOX 1500
BUTNER, NORTH CAROLINA 27509

DATE: _4.24.2026_
"SPECIAL/LEGAL MAIL"

The enclosed letter was processed through special mailing procedures for forwarding to you. The letter has been neither opened or inspected. If the writer raises a question or problem over which this facility has jurisdiction, you may wish to return the material for further information or clarification. If the writer enclosed correspondence for forwarding to another addressee, please return the enclosed to the above address.